# EXHIBIT B



| SERIAL NUMBER | FILING DATE | CLASS 705 | SUBCLASS 14 | GROUP ART UNIT | EXAMINER |
| --- | --- | --- | --- | --- | --- |
| | | 345 | | | |

APPLICANTS

NONE

*EVS*

NONE

*EVS*

| Foreign priority claimed ☐ yes ☑ no | | STATE OR COUNTRY | SHEETS DRWGS. | TOTAL CLAIMS | INDEP. CLAIMS | FILING FEE RECEIVED | ATTORNEY'S DOCKET NO. |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 35 USC 119 conditions met ☐ yes ☑ no | AS FILED | | | | | | |
| Verified and Acknowledged   Examiner's Initials | | | | | | | |

ADDRESS

*Jason Paul Demont*
*DeMont & Breyer, L.L.C.*
*244 English Place*
*Basking Ridge, NJ  07920*

TITLE

U.S. DEPT. OF COMM./PAT. & TM—PTO-436L (R

## PATENT APPLICATION

08/729188

08729188

APPROVED FOR LICENSE
NOV 1 3 9 6 2 6

INITIALS _____

| Date Entered or Counted | CONTENTS | Date Received or Mailed |
|---|---|---|

1. Application _____ papers.   D _____ 96

| 7-10-98 | 2. Rejection (3 mos) | 7-13-98 |
| | 3. *Amdt of Sec't (her)* | 11-18-98 |
| | 4. *Amdt A* | 11-18-98 |
| | 5. *Rejn 3 mos (FINAL)* | 02-08-99 |
| | 6. *Interview Summary* | 4-29-99 |
| | 7. *Charge of Address* | 5-3-99 |
| | 8. *Amdt (BOB)* | 5-3-99 |
| | 9. *Notice of allowability* | 6/1/99 |
| 8-27-99 | 10. Formal Drawings (2 shts) set | 6-17-99 |
| | 11. *Petition 1-378(c)* | 05/19/05 |
| | 12. *Petition Granted* | 6/17/05 |
| | 13. | |
| | 14. | |
| | 15. | |
| | 16. | |
| | 17. | |
| | 18. | |
| | 19. | |
| | 20. | |
| | 21. | |
| | 22. | |
| | 23. | |
| | 24. | |
| | 25. | |
| | 26. | |
| | 27. | |
| | 28. | |
| | 29. | |
| | 30. | |
| | 31. | |
| | 32. | |

(FRONT)

WTS000002

## SEARCHED

| Class | Sub. | Date | Exmr. |
|-------|------|------|-------|
| 705 | 14 | | |
| 705 | 26 | | |
| 705 | 27 | | |
| 705 | 30 | | |
| 395 | 200.54 | | |
| 395 | 200.57 | | |
| 395 | 200.48 | | |
| 395 | 200.75 | | |
| 707 | 501 | | |
| 707 | 513 | | |
| 707 | 104 | | |
| 380 | 23 | | |
| 380 | 24 | | |
| 380 | 25 | | |
| 379 | 118 | | |
| 379 | 127 | | |
| 379 | 142 | 7/9/98 | Ev5 |
| UPDATED ABOVE | | 2/4/99 | Ev5 |
| UPDATED ABOVE + | | | |
| 709 | 218. | | |
| | 224 | | |
| | 227 | | |
| | 245 | 6/1/99 | Ev5 |

## SEARCH NOTES

|  | Date | Exmr. |
|--|------|-------|
| CONSULTED MARK RINEHART 2756 & USPAT 5,717,860 RE. SEARCH | 7/9/98 | Ev5 |

## INTERFERENCE SEARCHED

| Class | Sub. | Date | Exmr. |
|-------|------|------|-------|
| 705 | 14 | | |
| 707 | 501 | | |
| 709 | 218,224, 245 | 6/1/99 | Ev5 |

(RIGHT OUTSIDE)

Staple Issue Slip Here

| POSITION | | ID NO. | DATE |
|---|---|---|---|
| CLASSIFIER | | 57 | 11-13-96 |
| EXAMINER | | 447 | 12/10/96 |
| TYPIST | mbt | | 12-10-96 |
| VERIFIER | | | |
| CORPS CORR. | | | |
| SPEC. HAND | | | |
| FILE MAINT. | | | |
| DRAFTING | | | |

## INDEX OF CLAIMS

| Final | Original | | | | Date | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 1 | ✓ | ✓ | = | | | | | |
| 2 | 2 | ✓ | | = | | | | | |
| 3 | 3 | ✓ | | = | | | | | |
| 4 | 4 | ✓ | | = | | | | | |
| 5 | 5 | ✓ | | = | | | | | |
| 6 | 6 | ✓ | | = | | | | | |
| 7 | 7 | ✓ | | = | | | | | |
| 8 | 8 | ✓ | | = | | | | | |
| 9 | 9 | ✓ | | = | | | | | |
| 10 | 10 | | | = | | | | | |
| 11 | 11 | ✓ | | = | | | | | |
| | 12 | | | | | | | | |
| | 13 | | | | | | | | |
| | 14 | | | | | | | | |
| | 15 | | | | | | | | |
| | 16 | | | | | | | | |
| | 17 | | | | | | | | |
| | 18 | | | | | | | | |
| | 19 | | | | | | | | |
| | 20 | | | | | | | | |
| | 21 | | | | | | | | |
| | 22 | | | | | | | | |
| | 23 | | | | | | | | |
| | 24 | | | | | | | | |
| | 25 | | | | | | | | |
| | 26 | | | | | | | | |
| | 27 | | | | | | | | |
| | 28 | | | | | | | | |
| | 29 | | | | | | | | |
| | 30 | | | | | | | | |
| | 31 | | | | | | | | |
| | 32 | | | | | | | | |
| | 33 | | | | | | | | |
| | 34 | | | | | | | | |
| | 35 | | | | | | | | |
| | 36 | | | | | | | | |
| | 37 | | | | | | | | |
| | 38 | | | | | | | | |
| | 39 | | | | | | | | |
| | 40 | | | | | | | | |
| | 41 | | | | | | | | |
| | 42 | | | | | | | | |
| | 43 | | | | | | | | |
| | 44 | | | | | | | | |
| | 45 | | | | | | | | |
| | 46 | | | | | | | | |
| | 47 | | | | | | | | |
| | 48 | | | | | | | | |
| | 49 | | | | | | | | |
| | 50 | | | | | | | | |

SYMBOLS

| ✓ | ............ | Rejected |
|---|---|---|
| = | ............ | Allowed |
| − (Through numeral) | | Canceled |
| + | ............ | Restricted |
| N | ............ | Non-elected |
| I | ............ | Interference |
| A | ............ | Appeal |
| O | ............ | Objected |

| Final | Original | | Date | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 51 | | | | | | | |
| | 52 | | | | | | | |
| | 53 | | | | | | | |
| | 54 | | | | | | | |
| | 55 | | | | | | | |
| | 56 | | | | | | | |
| | 57 | | | | | | | |
| | 58 | | | | | | | |
| | 59 | | | | | | | |
| | 60 | | | | | | | |
| | 61 | | | | | | | |
| | 62 | | | | | | | |
| | 63 | | | | | | | |
| | 64 | | | | | | | |
| | 65 | | | | | | | |
| | 66 | | | | | | | |
| | 67 | | | | | | | |
| | 68 | | | | | | | |
| | 69 | | | | | | | |
| | 70 | | | | | | | |
| | 71 | | | | | | | |
| | 72 | | | | | | | |
| | 73 | | | | | | | |
| | 74 | | | | | | | |
| | 75 | | | | | | | |
| | 76 | | | | | | | |
| | 77 | | | | | | | |
| | 78 | | | | | | | |
| | 79 | | | | | | | |
| | 80 | | | | | | | |
| | 81 | | | | | | | |
| | 82 | | | | | | | |
| | 83 | | | | | | | |
| | 84 | | | | | | | |
| | 85 | | | | | | | |
| | 86 | | | | | | | |
| | 87 | | | | | | | |
| | 88 | | | | | | | |
| | 89 | | | | | | | |
| | 90 | | | | | | | |
| | 91 | | | | | | | |
| | 92 | | | | | | | |
| | 93 | | | | | | | |
| | 94 | | | | | | | |
| | 95 | | | | | | | |
| | 96 | | | | | | | |
| | 97 | | | | | | | |
| | 98 | | | | | | | |
| | 99 | | | | | | | |
| | 100 | | | | | | | |

(LEFT INSIDE)

# File History Report

While copying your file we noticed that there are one or more 'Other Publications' missing from the contents of the file wrapper. At your request, we will attempt to obtain the missing publication(s) from alternative resources. Please note that additional charges will apply to this service.

WTS000005

US005960409A

# United States Patent [19]

## Wexler

| [11] | Patent Number: | 5,960,409 |
|---|---|---|
| [45] | Date of Patent: | Sep. 28, 1999 |

[54] **THIRD-PARTY ON-LINE ACCOUNTING SYSTEM AND METHOD THEREFOR**

[76] Inventor: **Daniel D. Wexler**, 481 Stratford Rd., Brooklyn, N.Y. 11218

[21] Appl. No.: **08/729,188**

[22] Filed: **Oct. 11, 1996**

[51] Int. Cl.⁶ .................... **G06F 13/14**; G06F 13/42; H04L 12/46; H04L 29/02

[52] U.S. Cl. .................... **705/14**; 709/224; 709/245; 709/218; 707/501

[58] Field of Search ...... ... ... ... **705/14, 26, 27, 705/30**; 395/200.54, 200.57, 200.48, 200.75; 707/501, 513, 104, 380/23, 24, 25; 379/118, 127, 142; 709/218, 224, 227, 245

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,220,655 | 6/1993 | Tsutsui .................... | 395/200.54 |
| 5,359,508 | 10/1994 | Rossides .................... | 705/30 |
| 5,537,314 | 7/1996 | Kanter .................... | 705/14 |
| 5,557,721 | 9/1996 | Fite et al. .................... | 705/14 |
| 5,572,643 | 11/1996 | Judson .................... | 395/200.48 |
| 5,712,979 | 1/1998 | Graber et al. .................... | 395/200.54 |
| 5,717,860 | 2/1998 | Graber et al. .................... | 395/200.57 |
| 5,740,549 | 4/1998 | Reilly et al. .................... | 705/14 |
| 5,751,956 | 5/1998 | Kirsch .................... | 395/200.33 |
| 5,812,769 | 9/1998 | Graber et al. .................... | 705/14 |

### OTHER PUBLICATIONS

Streams Press Release, "Streams Readies Release of Break-through Internet Media Planning and Assessment", http://streams.com/press_release.html, Aug. 31, 1995, pp. 1–2.
"Research Firms Strive for Web Tracking That Counts", Interactive Marketing News, vol. 2, No. 13, Jun. 23, 1995.

W3 Organization, "HTTP Request Fields", http://www.w3.org/pub/WWW/Protocols/HTTP/HTRQ_Headers.html, May 3, 1994, pp. 1–5.

*Primary Examiner*—Eric W. Stamber
*Attorney, Agent, or Firm*—DeMont & Breyer, L.L.C.; Wayne S. Breyer; Jason Paul DeMont

[57] **ABSTRACT**

A system and method for providing on-line third party accounting and statistical information is disclosed. A third party accounting service receives a download request signal ultimately intended for an advertiser Web site. The download request signal is generated when a user clicks on a banner displayed on a Web page of a frequently-visited Web site. The banner is published by the frequently-visited Web site for the benefit of the advertiser. The third party receives the download request since, rather than pointing to the advertiser Web site, the banner is configured to point to the third party Web site. The third party Web site maintains a count of all received download request signals generated by clicking on the banner. Since an advertiser banner may be displayed at more than one frequently-visited Web site, the third party Web site further maintains a log containing the address of the frequently-visited Web site that displayed the banner that generated the click, as well as other information provided by the user Web browser. The third party sends a redirect signal to the user Web browser causing it to send a download request to the advertiser Web site. The advertiser Web site then downloads the information originally sought by the user to his Web browser. The third party accumulates and tabulates statistical information including the number of clicks on the advertiser banner, and data indicative of the effectiveness of the banner-publisher frequently-visited Web site as an advertising medium. Such information is provided to the advertiser and/or the banner publisher.

**11 Claims, 2 Drawing Sheets**



*FIG. 1*
PRIOR ART



*FIG. 2*



WTS000007

Case 1:08-cv-03139-RRM -RER   Document 49-2   Filed 03/17/10   Page 9 of 94

# FIG. 3



5,960,409

1

## THIRD-PARTY ON-LINE ACCOUNTING SYSTEM AND METHOD THEREFOR

### FIELD OF THE INVENTION

The present invention relates to Internet services.

### BACKGROUND OF THE INVENTION

Until as recently as five years ago, the Internet was used primarily by the scientific and technical community and was relatively unknown outside of such circles. And now, five years hence, knowledge of the Internet, and its use, are ubiquitous.

Businesses have recognized the benefits of establishing a presence on the Internet, and, more particularly, on the World Wide Web (Web). One benefit is that it is a convenient way for both the buyer and the seller to do business; products and services can be ordered on-line. Another benefit to a business is that for the money spent, its advertising can reach a lot of prospective customers.

One form of Internet advertising is to establish a Web site operable to download at least one "Web page" to a user "visiting" that Web site. A Web page contains a single file of hypertext information, which may be text, graphics and even sound. The main Web page of a given Web site is referred to as a "Home page." The Home page is typically the first page a user will see when visiting a site. The Home page usually contains hypertext "links," to other subsidiary Web pages providing additional information about the business.

A Web site is ineffective as an advertising tool unless someone visits it. And, the only ones visiting the site are those that have sought it out. To increase the likelihood of such visitations, businesses may list their Web site on one or more Web directories. A user interested in particular products or services can use a search engine to search the Web directory and identify businesses providing such products or services and their Web address. The user can then "browse" the Web sites of the businesses offering the products/services of interest.

A directory listing increases the likelihood of a user finding the Web site of a particular business. Still, an advertiser listing will be found only if the user is looking for the goods or services provided by the advertiser. As such, many frequently-visited Web sites offer businesses a more aggressive alternative to a simple directory listing. In particular, a business can choose to have a "banner" displayed or "published" by such a frequently-visited site.

The banner describes an area of a Web page that can be used to display logos, etc., that will hopefully entice the reader to obtain further information pertaining to the banner. If so enticed, the reader can "click" on the banner, assuming the banner is a link, and follow the link to, for example, the Web site of the business "behind" the banner. The banner provides substantially more of an advertising presence to the advertiser than a directory listing, since, at least for a contracted period of time, the banner is conspicuously displayed on the Web page. Thus, regardless of a user purpose for visiting such a site, he may see the advertiser banner displayed.

While there is typically no cost for having one Web site listed in a directory, advertising with a banner is typically provided for a fee. The cost of advertising at such a site may be based, for example, on the number of times the user clicks displays the banner or on the number of times a user clicks on the banner linked to the advertiser Web site. And, of course, the cost is based on the popularity of the frequently-

2

visited site. While anyone with a Web site can display a banner, advertisers will want to advertise at frequently-visited sites, such as Web directories and large service providers that offer their own information and online resources as well as Internet access such as America Online, Compuserve, Prodigy and the like.

Regardless of the fee basis, both the advertiser and the administrator of the banner-publishing site will typically have an interest in knowing certain statistics pertaining to advertising effectiveness. For example, if the fee for the advertising is based on the number of clicks on the banner, then both parties will want this statistic. The advertiser can obtain this information by interrogating an icon log maintained by the advertiser Web site. This information, however, is not directly available to the banner-publishing site. While it can be obtained from the advertiser, the publishing-site administrator would presumably prefer receiving the relevant statistics from an unbiased source.

Further, since advertisers will often advertise at more than one location, both the advertisers and the publishers will typically have an interest in the statistics pertaining to the effectiveness of an individual publishing site at generating leads for the advertiser. In other words, they will be interested in knowing the percentage of the total number of "clicks" on the banner generated by each publishing site. Currently, such information is not readily available. To obtain it requires that the appropriate expertise is available, and that the server at the advertiser Web site is appropriately configured.

In view of the value of such statistics, and the relative inconvenience in obtaining such information, a need presently exists for an unbiased, readily available source of statistical/accounting information for Internet advertisers and advertising publishers.

### SUMMARY OF THE INVENTION

A system and method for providing on-line third party accounting and statistical information is disclosed. According to the invention, a banner, displayed for the purpose of enticing a first party (user) to visit a fourth party's (advertiser) Web site, is served to the user's Web browser by a second party (banner publisher). The banner is operable to download the address of a third-party (accounting and statistical service) to the user's Web browser and establish a link between the user and the third party service. The third party service receives a download request signal from the user's Web browser when the link is established, and maintains a count of received request signals and a log entry containing the second party's Web site address and other information provided by the user's Web browser. The third party service redirects the Web browser's download request signal to the advertiser's Web site, which serves a Web page to the user's Web browser. The method is transparent to the user; i.e., as far as the user is aware, the banner takes him directly to the advertiser's Web site.

The third party accumulates and tabulates statistical information including the number of clicks on the advertiser's banner, and further provides data indicative of the effectiveness of the banner publisher's Web page as an advertising medium.

### BRIEF DESCRIPTION OF THE DRAWING

Further features of the invention will become more apparent from the following detailed description of specific embodiments thereof when read in conjunction with the accompanying drawings, in which:

WTS000009

5,960,409

3

FIG. 1 shows a conventional system for advertising with a banner;

FIG. 2 is an exemplary embodiment of an on-line third party accounting and statistical system according to the present invention; and

FIG. 3 is a flow diagram of an illustrative method for implementing the system of FIG. 2.

DETAILED DESCRIPTION OF THE INVENTION

The present invention can be implemented over a network such as the Internet. It is understood that such a network is comprised of many computers linked over telecommunication lines and communicating using various standard protocols. Servers, which are programs that provide resources (e.g. a Web page), and clients, which are programs that access those resources on a user's behalf (e.g., a Web browser), are resident on such computers. Details concerning such computers and software, and the process of establishing communication links are known to those skilled in the art and will not be described herein except as appropriate for an understanding of the present invention.

Moreover, for clarity of explanation, this specification contains terminology and conventions familiar to those skilled in the art. Such terminology is often more metaphorical than literal in nature. For example, while those skilled in the art may refer to "visiting" a particular Web site, it should be appreciated that a user does not actually travel to the web site. Rather, a source file that is operable, in conjunction with the user's Web browser, to generate a Web page on a user's computer monitor is downloaded to the user's computer. Those skilled in the art are familiar with such metaphorical terminology and have an understanding of its literal implications and implementations.

FIG. 1 shows a prior art on-line system for advertising with a banner 9 As shown in FIG. 1, a user's Web browser 3 establishes a link or connection 11 with a Web site 5 of an entity displaying the banner ("banner publisher"). The banner publisher is anyone who presents advertising on behalf of an advertiser. The banner publisher will typically be a Web directory or a large service provider such as America Online, Compuserve, Prodigy and the like that offers their own information and online resources, as well as Internet access.

Once the user is on-line, i.e., connected to the Internet through an Internet Service Provider (ISP), the link 11 to the Web site 5 is established by "entering" the address, i.e., the uniform resource locator (URL), of the Web site 5 into the Web browser 3. Once the link 11 is established, the Web browser 3 sends a download request signal 11a to the Web site 5. In response, the Web site 5 downloads information, indicated by the reference numeral 11b, to the user's Web browser 3. The downloaded information includes a Web page 7 having a banner 9. The banner 9 is an area of the Web page 7 that can be used to display logos, etc., that will hopefully entice a user reading the banner to obtain further information pertaining to the banner.

As will be appreciated by those skilled in the art, a Web page is a hypertext file or source located on a specific computer. The hypertext source includes text as well as instructions for the user's browser as to how to display such text. The instructions are coded using a set of specifications referred to as Hypertext Markup Language (HTML).

The hypertext source contains one or more hypertext "links" that "point," i.e., provide the address, to another hypertext file. If a user wishes to "follow" the link, the user

4

can "click" on it, such as by depressing a mouse button. The user's browser then connects to, the appropriate Web site (computer), as dictated by the URL associated with the link, and sends a download request signal for a copy of the hypertext source associated with the URL. When the copy arrives, the browser displays the file in a format dictated by the HTML, generating a Web page on the user's browser. Included in the downloaded copy are the specifications of the banner 9 and associated links.

If enticed by the banner 9, the user can "click" on it, assuming the banner has a link associated with it. In the prior art, a banner typically points to the Web site 17 of the advertiser. A download request signal 19a is sent from the user's Web browser 3 to the advertiser's Web site 17. The Web site 17 downloads information, indicated by the reference numeral 19b, to the user's Web browser 3. The downloaded information is a copy of a hypertext source file operable to generate a Web page of the advertiser.

FIG. 2 shows an exemplary embodiment of an on-line third party accounting and statistical system 1 according to the present invention. As shown in FIG. 2, the system 1 includes the elements of FIG. 1, as well as the Web site 13 of a third party accounting and statistical service, and the link created between the user's Web browser and the third party Web site 13. With the addition of the Web site 13 of the third party service, and appropriate programming, the information flow between the user and the various Web sites changes, as described below

As described above for conventional systems, the link 11 to the Web site 5 is established by entering the URL of the Web site 5 into the Web browser 3. Once the link 11 is established, the Web browser 3 sends a download request signal 11a to the Web site 5. In response, the Web site 5 downloads information, indicated by the reference numeral 11b, to the user's Web browser 3. The downloaded information includes a copy of the requested hypertext source file operable to generate a Web page 7 having a banner 9.

As before, if the user is interested in more information about the banner 9, he may click on it. According to the present invention, the banner 9 points to the third party Web site 13 rather than the advertiser's Web site 17 as in conventional arrangements. As such, in a system according to the present invention, clicking on the banner 9 establishes a link between the user's Web browser 3 and the third party Web site 13. This is facilitated by the operation described in operation block 101 of the flow diagram of FIG. 3, which is an exemplary method according to the present invention. According to operation block 101, the hypertext file that generates the Web page 7 and the banner 9 is edited or originally coded so that the banner 9 is operable, in conjunction with the user's Web browser 3, to form a hypertext link to the third party Web site 13 when clicked upon. The aforementioned coding includes the URL pointing to the third party Web site 13.

If a user clicks on the banner 9 forming a link to the third party accounting and statistical service 13 receives a download request signal 15a from the user's Web browser 3. The third party service 13 accepts the download request signal 15a and increments a counter that keeps track of the number of received request signals, as indicated in operation block 105. Additionally, the third party service 13 logs a variety of information available from the user's Web browser 3. Such information can include the origin of the user, the address of the banner publisher, and so forth. In this manner, the third party service 13 accumulates statistical information useful to the banner publisher and the advertiser.

WTS000010

5,960,409

| 5 | 6 |

The download request received by the third party service 13 is ultimately intended to obtain information from the advertiser. As such, the third party service 13 redirects the received download request signal to the advertiser's Web site 17, as indicated in operation block 107. Specifically, the redirect request 15b is sent to the user's Web browser 3 from the third party Web site 13, and, from the browser, a download request 19a is sent to the advertiser's Web site 17 Once the download request signal is received by the advertiser, the advertiser's Web page is downloaded to the user's Web browser 3 as indicated by reference numeral 21b. The method is transparent from the user's point of view; he is not aware of the "detour" to the third party service 13.

In one embodiment, operation blocks 105 and 107 can be accomplished as follows. A Hypertext Transfer Protocol (HTTP) server program at the third party's site 13 is configured to issue a "302" redirect response when a specific URL is requested. Such configuration involves editing a configuration file for the HTTP server program. When the specific URL is requested, the request itself and Web browser 3 information is recorded, and the redirect to the intended URL, i.e., the advertiser's Web site, is issued. In this manner, the user is transparently redirected to the advertiser's Web site 17.

It will be appreciated that an advertiser may wish to advertise at more than one location, i.e., more than one banner-publishing site If so, the advertiser will presumably want to know, among other statistics, the effectiveness of each of the publishing sites, i.e., which site generates the most visits to the advertiser's Web site 17 Likewise, a banner-publishing site may wish to display the advertising, i.e., banner, of more than one advertiser. In a further embodiment, the present invention can tally clicks and generate statistics for multiple banner-publishing sites and multiple advertisers. This is accomplished by using multiple URLS, each pointing to different entry points at the third party Web site 13. The third party Web site, more properly its server, accepts the incoming URLS, accumulates statistics, and redirects each user's Web browser 3 to the intended (advertiser's) Web site in the manner previously described. Thus, clicks originating from different publishing sites, as well as those intended for different advertisers, are each directed to different entry points at the third party Web site 13. Assigning multiple URLs for this purpose is illustrated by the example below.

For the present example, there are two banner publishers, "Pub A" and "Pub B" and three advertisers "Ban 1," "Ban 2" and "Ban 3." Advertisers Ban 1 and Ban 2 have their banners displayed at both publishers' Web sites. Advertiser Ban 3 displays its banner only with Pub A. Exemplary URLs for the five banners are as follows.

| Banner Publisher | Advertiser | URL |
|---|---|---|
| Pub A | Ban 1 | http://www.genesis.com/puba/ban1 |
| Pub A | Ban 2 | http://www.genesis.com/puba/ban2 |
| Pub A | Ban 3 | http://www.genesis.com/puba/ban3 |
| Pub B | Ban 1 | http://www.genesis.com/pubb/ban1 |
| Pub B | Ban 2 | http://www.genesis.com/pubb/ban2 |

Thus, while advertiser Ban 1's banner at publisher A points to entry point "/puba/ban1" at the third party Web site 13, Ban 1's banner at publisher B points to entry point "/pubb/ban1." In this manner, the present invention can handle multiple banner publishers and multiple advertisers.

As appropriate, the third party accounting and statistical service 13 can provide a report to the advertiser and/or the

banner publisher. The report may include statistic such as, for example, the number of clicks on the banner 5, the percentage of clicks that result from the banner 5 being displayed on a particular banner publisher's Web page if the total number of impressions is known, the number of clicks on the banner per day, the date and time of each click, the origin of the user and so forth. Additionally, the report may include correlations developed from such statistics and illustrative charts and graphs. Typically, such a report would be provided on a regular basis.

While the present invention finds particular utility for use in conjunction with the Internet, and, more specifically, the World Wide Web (WWW), it can be applicable to other suitably-configured networks, as well. Thus, in a more generally applicable embodiment, the present invention provides a system and a method for third party accounting on, a network consisting of a plurality of nodes, wherein a user at a first node views a first quantity of information provided by a second node (publisher) for the benefit of a fourth node (advertiser).

Although specific embodiments of this invention have been shown and described herein, it is to be understood that these embodiments are merely illustrative of the many possible specific arrangements and methods that can be devised in application of the principles of the invention. Numerous and varied other arrangements and methods can be devised in accordance with these principles by those of ordinary skill in the art without departing from the scope and spirit of the invention.

I claim:

1. A method for accounting, wherein a first publisher having a first Web site and a second publisher having a second Web site each publish advertising for an advertiser having a third Web site, the method comprising:

receiving, at a fourth Web site, a first uniform resource locator from a first user's Web browser, wherein the first uniform resource locator is obtained by the first user's Web browser from the first Web site and wherein the first uniform resource locator is associated with advertising for the advertiser;

logging, at the fourth Web site, the receipt of the first uniform resource locator, in response to the receipt of the first uniform resource locator;

redirecting, at the fourth Web site, the first user's Web browser to the third Web site in response to the receipt of the first uniform resource locator;

receiving, at the fourth Web site, a second uniform resource locator from a second user's Web browser, wherein the second uniform resource locator is obtained by the second user's Web browser from the second Web site and wherein the second uniform resource locator is associated with advertising for the advertiser;

logging, at the fourth Web site, the receipt of the second uniform resource locator, in response to receiving the second uniform resource locator; and

redirecting, at the fourth Web site, the second user's Web browser to the third Web site in response to the receipt of the second uniform resource locator.

2. The method of claim 1 wherein the advertising published by the first publisher is a first banner that is associated with the first uniform resource locator and the advertising published by the second publisher is a second banner that is associated with the second uniform resource locator.

3. The method of claim 1 further comprising logging at least one of an indicium of the identity of the first user and an indicium of the identity of the first publisher.

WTS000011

5,960,409

7

4. The method of claim 1, further comprising preparing a report for one or both of the advertiser and the first publisher, the report comprising each receipt of the first uniform resource locator by the fourth Web site.

5. The method of claim 1 further comprising configuring a Hypertext Transfer Protocol server program at the fourth Web site to issue a 302 redirect response when the first uniform resource locator is received.

6. The method of claim 5 further comprising editing a configuration file for the Hypertext Transfer Protocol server program.

7. A method for third party accounting on a network that comprises a plurality of nodes, wherein a first node and a second node each publish advertising for a third node, the method comprising:

receiving, at a fourth node, a first download request signal from a fifth node, which first download request signal is received by the fifth node from the first node;

logging, at the fourth node, the receipt of the first download request signal;

transmitting from the fourth node a second download request signal to the fifth node, which second download request signal directs the fifth node towards the third node;

receiving, at the fourth node, a third download request signal from a sixth node, which third download request signal is received by the sixth node from the second node;

logging, at the fourth node, the receipt of the third download request signal; and

transmitting from the fourth node a fourth download request signal to the sixth node, which fourth download request signal directs the sixth node to the third node.

8. The method of claim 7 wherein the advertising published by the first node for the third node is a first banner that is associated with the first download request signal and the advertising published by the second node for the third node

8

is a second banner that is associated with the second download request signal.

9. A method comprising:

receiving a first uniform resource locator from a first browser, wherein the first uniform resource locator is obtained by the first browser from a first Web site that publishes advertising for an advertiser;

logging, in response to the receipt of the first uniform resource locator, the receipt of the first uniform resource locator;

transmitting, in response to the receipt of the first uniform resource locator, a second uniform resource locator to the first browser, wherein the second uniform resource locator is associated with a second Web site that is associated with the advertiser;

receiving a third uniform resource locator from a second browser, wherein the third uniform resource locator is obtained by the second browser from a third Web site that publishes advertising for the advertiser;

logging, in response to the receipt of the third uniform resource locator, the receipt of third uniform resource locator; and

transmitting, a fourth uniform resource locator to the second browser, wherein the fourth uniform resource locator is associated with the second Web site.

10. The method of claim 9 wherein the first uniform resource locator is uniquely associated with the first Web site and the second Web site, and wherein the third uniform resource locator is uniquely associated with the second Web site and the third Web site.

11. The method of claim 9 wherein the first uniform resource locator is associated with a first banner that is published by the first Web site and that is advertising for the advertiser and wherein the third uniform resource locator is associated with a second banner that is published by the third Web site and that is also advertising for the advertiser.

* * * * *

WTS000012

PATENT APPLICATION SERIAL NO. _____ 08/729188

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
FEE RECORD SHEET

MDH
8-14-97

260 NJ 10/29/96 08729188
1 201      305.00 CK

PTO-1556
(5/87)

*129188*

3601

## ABSTRACT

A system and method for providing on-line third party accounting and statistical information is disclosed. A third party accounting service receives a download request signal ultimately intended for an advertiser's Web site  The download request signal is generated when a user clicks on a banner displayed on a Web page of a frequently-visited Web site. The banner is published by the frequently-visited Web site for the benefit of the advertiser. The third party receives the download request since, rather than pointing to the advertiser's Web site, the banner is configured to point to the third party's Web site  The third party Web site maintains a count of all received download request signals generated by clicking on the banner. Since an advertiser's banner may be displayed at more than one frequently-visited Web site, the third party Web site further maintains a log containing the address of the frequently-visited Web site that displayed the banner that generated the click, as well as other information provided by the user's Web browser  The third party sends a redirect signal to the user's Web browser causing it to send a download request to the advertiser's Web site. The advertiser's Web site then downloads the information originally sought by the user to his Web browser  The third party accumulates and tabulates statistical information including the number of clicks on the advertiser's banner, and data indicative of the effectiveness of the banner-publisher's frequently-visited Web site as an advertising medium. Such information is provided to the advertiser and/or the banner publisher.

WTS000014

*#2*        *385:20,*        08/729188

Exp. Mail No.: EG654280747US

3601

## THIRD-PARTY ON-LINE ACCOUNTING SYSTEM
## AND METHOD THEREFOR

5      **Field of the Invention**

The present invention relates to Internet services.

**Background of the Invention**

Until as recently as five years ago, the Internet was used primarily by the scientific and

10     technical community and was relatively unknown outside of such circles.  And now,  five years

hence, knowledge of the Internet, and its use, are ubiquitous.

Businesses have recognized the benefits of establishing a presence on the Internet, and,

more particularly, on the World Wide Web (Web).   One benefit is that it is a convenient way for

both the buyer and the seller to do business; products and services can be ordered on-line.

15     Another benefit to a business is that for the money spent, its advertising can reach a lot of

prospective customers

One form of Internet advertising is to establish a Web site operable to download at least

one "Web page" to a user "visiting" that Web site.  A Web page contains a single file of

hypertext information, which may be text, graphics and even sound.  The main Web page of a

20     given Web site is referred to as a "Home page."  The Home page is typically the first page a user

will see when visiting a site.  The Home page usually contains hypertext "links" to other

subsidiary Web pages providing additional information about the business.

1

3601

A Web site is ineffective as an advertising tool unless someone visits it.  And, the only ones visiting the site are those that have sought it out.  To increase the likelihood of such visitations, businesses may list their Web site on one or more Web directories.  A user interested in particular products or services can use a search engine to search the Web directory and

5   identify businesses providing such products or services and their Web address.  The user can then "browse" the Web sites of the businesses offering the products/services of interest.

A directory listing increases the likelihood of a user finding the Web site of a particular business.  Still, an advertiser's listing will be found only if the user is looking for the goods or services provided by the advertiser.  As such, many frequently-visited Web sites offer businesses

10   a more aggressive alternative to a simple directory listing.  In particular, a business can choose to have a "banner" displayed or "published" by such a frequently-visited site.

The banner describes an area of a Web page that can be used to display logos, etc., that will hopefully entice the reader to obtain further information pertaining to the banner.  If so enticed, the reader can "click" on the banner, assuming the banner is a link, and follow the link

15   to, for example, the Web site of the business "behind" the banner.   The banner provides substantially more of an advertising presence to the advertiser than a directory listing, since, at least for a contracted period of time, the banner is conspicuously displayed on the Web page. Thus, regardless of a user's purpose for visiting such a site, he may see the advertiser's banner displayed.

20   While there is typically no cost for having one's Web site listed in a directory, advertising with a banner is typically provided for a fee.  The cost of advertising at such a site may be based,

2

3601

for example, on the number of times the site displays the banner or on the number of times a user clicks on the banner linked to the advertiser's Web site. And, of course, the cost is based on the popularity of the frequently-visited site. While anyone with a Web site can display a banner, advertisers will want to advertise at frequently-visited sites, such as Web directories and large

5  service providers that offer their own information and online resources as well as Internet access such as America Online, Compuserve, Prodigy and the like

Regardless of the fee basis, both the advertiser and the administrator of the banner-publishing site will typically have an interest in knowing certain statistics pertaining to advertising effectiveness. For example, if the fee for the advertising is based on the number of

10  clicks on the banner, then both parties will want this statistic. The advertiser can obtain this information by interrogating an access log maintained by the advertiser's Web site  This information, however, is not directly available to the banner-publishing site  While it can be obtained from the advertiser, the publishing-site administrator would presumably prefer receiving the relevant statistics from an unbiased source.

15  Further, since advertisers will often advertise at more than one location, both the advertisers and the publishers will typically have an interest in the statistics pertaining to the effectiveness of an individual publishing site at generating leads for the advertiser. In other words, they will be interested in knowing the percentage of the total number of "clicks" on the banner generated by each publishing site  Currently, such information is not readily available.

20  To obtain it requires that the appropriate expertise is available, and that the server at the advertiser's Web site is appropriately configured.

3

3601

In view of the value of such statistics, and the relative inconvenience in obtaining such information, a need presently exists for an unbiased, readily available source of statistical/accounting information for Internet advertisers and advertising publishers.

### Summary of the Invention

5

A system and method for providing on-line third party accounting and statistical information is disclosed. According to the invention, a banner, displayed for the purpose of enticing a first party (user) to visit a fourth party's (advertiser) Web site, is served to the user's Web browser by a second party (banner publisher). The banner is operable to download the

10  address of a third-party (accounting and statistical service) to the user's Web browser and establish a link between the user and the third party service. The third party service receives a download request signal from the user's Web browser when the link is established, and maintains a count of received request signals and a log entry containing the second party's Web site address and other information provided by the user's Web browser. The third party service redirects the

15  Web browser's download request signal to the advertiser's Web site, which serves a Web page to the user's Web browser. The method is transparent to the user; i.e., as far as the user is aware, the banner takes him directly to the advertiser's Web site.

The third party accumulates and tabulates statistical information including the number of clicks on the advertiser's banner, and further provides data indicative of the effectiveness of the

20  banner publisher's Web page as an advertising medium.

4

3601

**Brief Description of the Drawings**

    Further features of the invention will become more apparent from the following detailed description of specific embodiments thereof when read in conjunction with the accompanying drawings, in which:

5       FIG. 1 shows a conventional system for advertising with a banner;

    FIG. 2 is an exemplary embodiment of an on-line third party accounting and statistical system according to the present invention; and

    FIG 3 is a flow diagram of an illustrative method for implementing the system of FIG 1.

10   **Detailed Description of the Invention**

    The present invention can be implemented over a network such as the Internet.  It is understood that such a network is comprised of many computers linked over telecommunication lines and communicating using various standard protocols.  Servers, which are programs that provide Internet resources (e g, a Web page), and clients, which are programs that access those

15   resources on a user's behalf (e.g., a Web browser), are resident on such computers.  Details concerning such computers and software, and the process of establishing communication links are known to those skilled in the art and will not be described herein except as appropriate for an understanding of the present invention.

    Moreover, for clarity of explanation, this specification contains terminology and

20   conventions familiar to those skilled in the art.  Such terminology is often more metaphorical than literal in nature.  For example, while those skilled in the art may refer to "visiting" a

5

WTS000019

3601

particular Web site, it should be appreciated that a user does not actually travel to the web site.

Rather, a source file that is operable, in conjunction with the user's Web browser, to generate a

Web page on a user's computer monitor is downloaded to the user's computer. Those skilled in

the art are familiar with such metaphorical terminology and have an understanding of its literal

5  implications and implementations.

FIG. 1 shows a prior art on-line system for advertising with a banner 9. As shown in

FIG. 1, a user's Web browser 3 establishes a link or connection 11 with a Web site 5 of an entity

displaying the banner ("banner publisher"). The banner publisher is anyone who presents

advertising on behalf of an advertiser. The banner publisher will typically be a Web directory or

10  a large service provider such as America Online, Compuserve, Prodigy and the like that offers

their own information and online resources, as well as Internet access.

_an Internet_

a  Once the user is on-line, i.e., connected to the Internet through ~~a Internet~~ Service Provider

(ISP), the link 11 to the Web site 5 is established by "entering" the address, i.e., the uniform

resource locator (URL), of the Web site 5 into the Web browser 3. Once the link 11 is

15  established, the Web browser 3 sends a download request signal 11a to the Web site 5. In

response, the Web site 5 downloads information, indicated by the reference numeral 11b, to the

user's Web browser 3. The downloaded information includes a Web page 7 having a banner 9.

The banner 9 is an area of the Web page 7 that can be used to display logos, etc., that will

hopefully entice a user reading the banner to obtain further information pertaining to the banner

20  As will be appreciated by those skilled in the art, a Web page is a hypertext file or source

located on a specific computer. The hypertext source includes text as well as instructions for the

6

3601

user's browser as to how to display such text.  The instructions are coded using a set of

specifications referred to as Hypertext Markup Language (HTML).

The hypertext source contains one or more hypertext "links" that "point," i.e., provide the

address, to another hypertext file.  If a user wishes to "follow" the link, the user can "click" on it,

5    such as by depressing a mouse button.  The user's browser then connects to the appropriate Web

site (computer), as dictated by the URL associated with the link, and sends a download request

signal for a copy of the hypertext source associated with the URL.  When the copy arrives, the

browser displays the file in a format dictated by the HTML, generating a Web page on the user's

browser   Included in the downloaded copy are the specifications of the banner 9 and associated

10   links

If enticed by the banner 9, the user can "click" on it, assuming the banner has a link

associated with it.  In the prior art, a banner typically points to the Web site 17 of the advertiser.

A download request signal 19a is sent from the user's Web browser 3 to the advertiser's Web site

17.  The Web site 5 downloads information, indicated by the reference numeral 19b, to the

15   user's Web browser 3.  The downloaded information is a copy of a hypertext source file operable

to generate a Web page of the advertiser.

FIG. 2 shows an exemplary embodiment of an on-line third party accounting and

statistical system 1 according to the present invention.  As shown in FIG. 2, the system 1

includes the elements of FIG. 1, as well as the Web site 13 of a third party accounting and

20   statistical service, and the link created between the user's Web browser and the third party Web

site 13.  With the addition of the Web site 13 of the third party service, and appropriate

7

3601

programming, the information flow between the user and the various Web sites changes, as
described below.

As described above for conventional systems, the link 11 to the Web site 5 is established
by entering the URL of the Web site 5 into the Web browser 3. Once the link 11 is established,
the Web browser 3 sends a download request signal 11a to the Web site 5. In response, the Web
site 5 downloads information, indicated by the reference numeral 11b, to the user's Web browser
3. The downloaded information includes a copy of the requested hypertext source file operable
to generate a Web page 7 having a banner 9.

As before, if the user is interested in more information about the banner 9, he may click
on it. According to the present invention, the banner 9 points to the third party Web site 13
rather than the advertiser's Web site 17 as in conventional arrangements. As such, in a system
according to the present invention, clicking on the banner 9 establishes a link between the user's
Web browser 3 and the third party Web site 13  This is facilitated by the operation described in
operation block 101 of the flow diagram of FIG. 3, which is an exemplary method according to
the present invention. According to operation block 101, the hypertext file that generates the
Web page 7 and the banner 9 is edited or originally coded so that the banner 9 is operable, in
conjunction with the user's Web browser 3, to form a hypertext link to the third party Web site
13 when clicked upon. The aforementioned coding includes the URL pointing to the third party
site 13.

If a user clicks on the banner 9 forming a link to the third party, then, as indicated in
operation block 103 of FIG. 3, the third party accounting and statistical service 13 receives a

8

3601

download request signal 15a from the user's Web browser 3.  The third party service 13 accepts

the download request signal 15a and increments a counter that keeps track of the number of

received request signals, as indicated in operation block 105.  Additionally, the third party

service 13 logs a variety of information available from the user's Web browser 3.  Such

5    information can include the origin of the user, the address of the banner publisher, and so forth.

In this manner, the third party service 13  accumulates statistical information useful to the banner

publisher and the advertiser.

  The download request received by the third party service 13 is ultimately intended to

obtain information from the advertiser.  As such, the third party service 13 re-directs the received

10   download request signal to the advertiser's Web site 17, as indicated in operation block 107.

Specifically, the redirect request 15b is sent to the user's Web browser 3 from the third party

Web site 13, and, from the browser, a download request 19a is sent to the advertiser's Web site

17.  Once the download request signal is received by the advertiser, the advertiser's Web page is

downloaded to the user's Web browser 3 as indicated by reference numeral 19b.  The method is

15   transparent from the user's point of view; he is not aware of the "detour" to the third party

service 13.

  In one embodiment, operation blocks 105 and 107 can be accomplished as follows.  A

Hypertext Transfer Protocol (HTTP) server program at the third party's site 13 is configured to

issue a "302" redirect response when a specific URL is requested.  Such configuration involves

20   editing a configuration file for the HTTP server program.  When the specific URL is requested,

the request itself and Web browser 3 information is recorded, and the redirect to the intended

9

WTS000023

3601

URL, i.e., the advertiser's Web site, is issued.  In this manner, the user is transparently redirected to the advertiser's Web site 17

It will be appreciated that an advertiser may wish to advertise at more than one location, i.e., more than one banner-publishing site.  If so, the advertiser will presumably want to know, among other statistics, the effectiveness of each of the publishing sites, i.e., which site generates the most visits to the advertiser's Web site 17.  Likewise, a banner-publishing site may wish to display the advertising, i.e., banner, of more than one advertiser.  In a further embodiment, the present invention can tally clicks and generate statistics for multiple banner-publishing sites and multiple advertisers.  This is accomplished by using multiple URLs, each pointing to different entry points at the third party Web site 13.  The third party Web site, more properly its server, accepts the incoming URLs, accumulates statistics, and redirects each user's Web browser 3 to the intended (advertiser's) Web site in the manner previously described.  Thus, clicks originating from different publishing sites, as well as those intended for different advertisers, are each directed to different entry points at the third party Web site 13.   Assigning multiple URLs for this purpose is illustrated by the example below.

For the present example, there are two banner publishers, "Pub A" and "Pub B" and three advertisers "Ban 1," "Ban 2" and "Ban 3."  Advertisers Ban 1 and Ban 2 have their banners displayed at both publishers' Web sites.  Advertiser Ban 3 displays its banner only with Pub A.  Exemplary URLs for the five banners are as follows.

10

3601

| Banner Publisher | Advertiser | URL |
|---|---|---|
| Pub A | Ban 1 | http://www.genesis.com/puba/ban1 |
| Pub A | Ban 2 | http://www.genesis.com/puba/ban2 |
| Pub A | Ban 3 | http://www.genesis.com/puba/ban3 |
| Pub B | Ban 1 | http://www.genesis.com/pubb/ban1 |
| Pub B | Ban 2 | http://www.genesis.com/pubb/ban2 |

Thus, while advertiser Ban 1's banner at publisher A points to entry point "puba/ban1" at the third party Web site 13, Ban 1's banner at publisher B points to entry point "pubb/ban1." In this manner, the present invention can handle multiple banner publishers and multiple advertisers.

As appropriate, the third party accounting and statistical service 13 can provide a report to the advertiser and/or the banner publisher. The report may include statistics such as, for example, the number of clicks on the banner 5, the percentage of clicks that result from the banner 5 being displayed on a particular banner publisher's Web page if the total number of impressions is known, the number of clicks on the banner per day, the date and time of each click, the origin of the user and so forth. Additionally, the report may include correlations developed from such statistics and illustrative charts and graphs. Typically, such a report would be provided on a regular basis.

While the present invention finds particular utility for use in conjunction with the Internet, and, more specifically, the World Wide Web (WWW), it can be applicable to other

11

WTS000025

3601

suitably-configured networks, as well. Thus, in a more generally applicable embodiment, the present invention provides a system and a method for third party accounting on a network consisting of a plurality of nodes, wherein a user at a first node views a first quantity of information provided by a second node (publisher) for the benefit of a fourth node (advertiser).

5       Although specific embodiments of this invention have been shown and described herein, it is to be understood that these embodiments are merely illustrative of the many possible specific arrangements and methods that can be devised in application of the principles of the invention. Numerous and varied other arrangements and methods can be devised in accordance with these principles by those of ordinary skill in the art without departing from the scope and spirit of the

10      invention.

12

3601

I claim:

1.      A method for on-line third party accounting, wherein a publisher having a first Web site publishes advertising for an advertiser having a second Web site, the method comprising the steps of

(A)     receiving, at a third party Web site, a download request signal from a user's Web browser, which signal is ultimately intended for the advertiser's Web site;

(B)     incrementing a counter, at the third party Web site, in response to receiving the download request signal and logging information available from the Web browser; and

(C)     redirecting the download request signal to the advertiser's Web site.

2.      The method of claim 1 wherein the advertising is a banner capable of forming a hypertext link to the third party Web site, and further comprising the step of associating, with the banner, coding operable to form the hypertext link.

3.      The method of claim 1 wherein step (B) further comprises logging at least one of either the origin of the user and the address of the banner publisher.

4       The method of claim 1, further comprising the step of preparing a report for one or both of the advertiser and the publisher, the report comprising the number of download request signals counted in step (B).

13

3601

5.     The method of claim 1 wherein step (C) further comprises configuring a

Hypertext Transfer Protocol server program at the third party's Web site to issue a 302 redirect

response when a specific Uniform Resource Locator is requested.


6.     The method of claim 5 wherein step (C) further comprises editing a configuration

file for the HTTP server program.


7.     A method for third party accounting on a network, the network consisting of a

plurality of nodes, wherein a user at a first node views a first quantity of information provided by

a second node for the benefit of a fourth node, the method comprising the steps of:

(A)    receiving, at a third node, a signal from the first node, which signal is ultimately
       intended for the fourth node;

(B)    incrementing a counter in response to receiving the signal; and

(C)    redirecting the signal through the first node to the fourth node.


8      The method of claim 7 wherein step (A) further comprises receiving a download

request signal.


9.     An on-line third party accounting system for counting the number of times that

any one of a plurality of users, each using a Web browser to view a banner on a Web page, click

14

3601

on the banner to obtain additional information, wherein the banner is displayed by a first party

for the benefit of a second party, the system comprising:

a communications link established between the Web browser of at least one user of the

plurality clicking on the banner and a third party computer, the link established when the user

clicks on the banner;

the third party computer, which computer is programmed to count download request

signals received from the Web browser of the at least one user when the user clicks on the

banner, each download request signal corresponding to a click on the banner, the third party

computer further programmed to send a redirect signal to the Web browser of the at least one

user; wherein,

once the redirect signal is received by the Web browser, a communications link is

established between the Web browser and a computer of the second party, and a signal is sent to

the second party computer, which second party computer responds by downloading said

additional information to the Web browser.

15

3601

IN THE UNITED STATES
PATENT AND TRADEMARK OFFICE

Declaration and Power of Attorney

As the below named inventor, I hereby declare that:

My residence, post office address and citizenship are as stated below next to my name.

I believe I am the original, first and sole inventor of the subject matter which is claimed and for which a patent is sought on the invention entitled **THIRD-PARTY ON LINE ACCOUNTING SYSTEM AND METHOD THEREFOR** the specification of which is attached hereto.

I hereby state that I have reviewed and understand the contents of the above identified specification, including the claims, as amended by an amendment, if any, specifically referred to in this oath or declaration.

I acknowledge the duty to disclose all information known to me which is material to patentability as defined in Title 37, Code of Federal Regulations, 1.56.

I hereby claim foreign priority benefits under Title 35, United States Code, 119 of any foreign application(s) for patent or inventor's certificate listed below and have also identified below any foreign application for patent or inventor's certificate having a filing date before that of the application on which priority is claimed:

None

I hereby claim the benefit under Title 35, United States Code, 120 of any United States application(s) listed below and, insofar as the subject matter of each of the claims of this application is not disclosed in the prior United States application in the manner provided by the first paragraph of Title 35, United States Code, 112, I acknowledge the duty to disclose all information known to me to be material to patentability as defined in Title 37, Code of Federal Regulations, 1.56 which became available between the filing date of the prior application and the national or PCT international filing date of this application:

None

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

WTS000030

3601

-2-

     I hereby appoint the following attorney with full power of substitution and revocation, to prosecute said application, to make alterations and amendments therein, to receive the patent, and to transact all business in the Patent and Trademark Office connected therewith:

          Wayne S. Breyer   Reg. No.: ~~38,089~~  3
          Jason Paul Demont  Reg. No.: 35,793

     Please address all correspondence to: Wayne S. Breyer, LAW OFFICES OF WAYNE S. BREYER, 35 Malus Lane, Middletown, New Jersey 07748.  Telephone calls should be made to Wayne S. Breyer by dialing Area Code (908) 706-3497.

Full name of sole inventor:   Daniel D. Wexler

Inventor's signature _Daniel Wexler_ Date _10/9/96_

Residence: Brooklyn, New York, NY

Citizenship: U.S.

Post Office Address:      481 Stratford Road
                  Brooklyn, New York 11218

WTS000031

Patent



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Verified Statement Claiming Small Entity Status
Under 37 CFR 1.9(f) & 1.27(b) - Independent Inventor

Applicant:        Daniel D. Wexler

Serial No.:       n/a

Filed:            n/a

Title:            THIRD-PARTY ON LINE ACCOUNTING SYSTEM AND METHOD
                  THEREFOR

As a below named inventor, I hereby declare that I qualify as an independent inventor as defined in 37 CFR 1.9(c) for purposes of paying reduced fees to the Patent and Trademark Office described in:

☒     the specification filed herewith with title as listed above.

☐     the application identified above

I have not assigned, granted, conveyed or licensed and am under no obligation under contract of law to assign, grant, convey or license, any rights in the invention to any person who would not qualify as an independent inventor under 37 CFR 1.9(c) if that person had made the invention, or to any concern that would not qualify as a small business concern under 37 CFR 1.9(d) or a nonprofit organization under 37 CFR 1.9(e).

Each person, concern or organization to which I have assigned, granted, conveyed, licensed or am under an obligation under contract or law to assign, grant, convey or license any rights in the invention is listed below.

☒     No such person, concern or organization exists

☐     Each such person, concern or organization is listed below.

Separate verified statements are required from each named person, concern or organization having rights to the invention averring to their status as small entities. (37 CFR 1.27)

I acknowledge the duty to file, in this application or patent, notification of any change in status resulting in loss of entitlement to small entity status prior to paying, or at the time of paying, the earliest of the issue fee or any maintenance fee due after the date on which status as a small entity is no longer appropriate.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the application, any patent issuing thereon, or any patent to which this verified statement is directed.

| Daniel D. Wexler | | |
| --- | --- | --- |
| Name of Inventor | Name of Inventor | Name of Inventor |
| | | |
| Signature of Inventor | Signature of Inventor | Signature of Inventor |
| | | |
| Date | Date | Date |

PRINT OF D    'INGS
AS ORIGIN    Y FILED

08/729188



PRIOR ART

FIG 1



FIG 2

PRINT OF DRAWINGS
AS ORIGIN. LY FILED   P/2

08/729188



FIG. 3

WTS000035

00/729188



IN THE UNITED STATES
PATENT AND TRADEMARK OFFICE

PATENT APPLICATION

| | |
|---|---|
| **INVENTOR(S)** | Daniel D. Wexler |
| **CASE** | 3601 |
| **TITLE** | THIRD-PARTY ON LINE ACCOUNTING SYSTEM AND METHOD THEREFOR |

THE COMMISSIONER OF PATENTS AND TRADEMARKS
BOX PATENT APPLICATION
WASHINGTON, D.C. 20231

SIR:

Enclosed are the following papers relating to the above-named application for patent:

    15 Pages of Specification (including 3 pages of claims)
    1 Page of Abstract
    2 Sheets of drawing(s)
       Declaration and Power of Attorney
       Verified Statement Claiming Small Entity Status
       Return Postcard

This filing is by a small entity. A verified statement under 37 CFR 1.9(f) & 1.27(b) is attached.

| | CLAIMS AS FILED | | | |
|---|---|---|---|---|
| | NO. FILED | NO. EXTRA | RATE | CALCULATIONS |
| Total Claims | 9 – 20 = | 0 | x $11 = | $ -0- |
| Independent Claims | 3 – 3 = | 0 | x $40 = | $ -0- |
| Multiple Dependent Claim(s), if applicable | | | $130 = | $ -0- |
| Basic Fee | | | | $ 385.00 |
| | | | TOTAL FEE: | $ 385.00 |

3601

- 2 -

Please file the application.  A check in the amount of $385.00 is enclosed to cover the filing fee.

Please address all correspondence to:  **Wayne S. Breyer, LAW OFFICES OF WAYNE S. BREYER, 35 Malus Lane, Middletown, N.J.  07748.**  Telephone calls should be made to Wayne S. Breyer at (908) 706-3497.

Respectfully,

LAW OFFICES OF WAYNE S. BREYER

By _____

Wayne S. Breyer
Reg. No.: 38,089
Attorney for Applicant
35 Malus Lane
Middletown, N.J.  07748

Date: October 2, 1996

"Express Mail" mailing label number EG654280747US

Date of Deposit October 11, 1996.

I hereby certify that this paper or fee is being deposited with the United States Postal Service "Express Mail Post Office to Addressee" service under 37 CFR 1.10 on the date indicated above and is addressed to the Commissioner of Patents and Trademarks, Washington, D.C. 20231.

Wayne S. Breyer
(Typed or printed name of person mailing paper or fee)

(Signature of person mailing paper or fee)

*RS*



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|

08/729,182    10/11/96    WEXLER

| EXAMINER |
|---|

LM21/0719

| ART UNIT | PAPER NUMBER |
|---|---|

WAYNE S BREYER
35 MALUS LANE
MIDDLETOWN NJ 07748

DATE MAILED

07/13/98

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

## OFFICE ACTION SUMMARY

☒ Responsive to ~~communication(s)~~ *THE APPLICATION* filed on _10/11/96_.

☐ This action is **FINAL.**

☐ Since this application is in condition for allowance except for formal matters, **prosecution as to the merits is closed in accordance with the practice under** *Ex parte Quayle,* 1935 D.C. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire ___3___ month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

**Disposition of Claims**

☒ Claim(s) _1-9_ is/are pending in the application.

  Of the above, claim(s) _____ is/are withdrawn from consideration.

☐ Claim(s) _____ is/are allowed.

☒ Claim(s) _1-9_ is/are rejected.

☐ Claim(s) _____ is/are objected to.

☐ Claims _____ are subject to restriction or election requirement.

**Application Papers**

☒ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

☐ The proposed drawing correction, filed on _____ is ☐ approved ☐ disapproved.

☐ The specification is objected to by the Examiner.

☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

  ☐ All ☐ Some* ☐ None of the CERTIFIED copies of the priority documents have been

    ☐ received.

    ☐ received in Application No. (Series Code/Serial Number) _____.

    ☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

  *Certified copies not received: _____.

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

☒ Notice of Reference Cited, PTO-892

☐ Information Disclosure Statement(s), PTO-1449, Paper No(s). _____.

☐ Interview Summary, PTO-413

☒ Notice of Draftsperson's Patent Drawing Review, PTO-948

☐ Notice of Informal Patent Application, PTO-152

-- SEE OFFICE ACTION ON THE FOLLOWING PAGES --

PTOL-326 (Rev. 10/95)                    ☆ U.S. GPO. 1996-409-290;40029

Serial Number: 08/729,188                                                    Page 2

Art Unit: 2764

1.      This application has been examined.  Claims 1-9 are pending.

2.      The disclosure is objected to because of the following informalities: page 5 line 9, the reference

to "FIG. 1" (the prior art) should instead be to "FIG. 2" (showing the instant invention); and page 7

line 14, "Web site 5" should instead be "Web site 17".  Appropriate correction is required.

3.      Claims 3, 5 and 9 are objected to as failing to particularly point out and distinctly claim the

subject matter which applicant regards as his invention.  See 37 C.F.R. § 1.75(a) and M.P.E.P.

§ 608.01(I).

        The examiner has made several assumptions at this point of the examination, especially as it

relates to antecedent basis, that will be clear from reading the paragraphs concerning claim objections

below.  These assumptions concern the examiner's suggestions of alternative claim language which

appear to add a clearer understanding to the claims.  These assumptions are carried through the

remainder of the examination of the claimed limitations.  Applicant should inform the examiner in any

response to this office action if any of these assumptions are incorrect and make appropriate changes

to the claims.

        Correction of the following is required:

        A. Claim 3 states that it is dependent on claim 1 when it is believed that applicant intended this

claim to be dependent on claim 2; this supposition is further supported by the phrase "the banner

publisher" in line 2 of claim 3 when no "banner" is introduced until claim 2 (note, however that "the

banner publisher" still does not have proper antecedent basis in either claim 1 or in claim 2).

        B. Claim 5 line 2, the acronym "(HTTP)" should be added after "Hypertext Transfer Protocol"

and before "server" since claim 6 references "the HTTP server".

Serial Number: 08/729,188                                        Page 3

Art Unit: 2764

  C. Claim 9 lines 6 and 9 each mention "the user" when "the at least one user" has already been

used, and has established proper antecedent basis.

4.   The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the

basis for the rejections under this section made in this Office action:

  A person shall be entitled to a patent unless --

  (e) the invention was described in a patent granted on an application for patent by another filed in the United States
  before the invention thereof by the applicant for patent, or on an international application by another who has fulfilled
  the requirements of paragraphs (1), (2), and (4) of section 371© of this title before the invention thereof by the
  applicant for patent.

5.   Claims 1-9 are rejected under 35 U.S.C. 102(e) as being clearly anticipated by any single one

of the following:

  a) Graber et al. (US 5,712,979) (see at least the abstract, column 5 line 25 to column 7 line 15,

and column 10 line 45 to column 15 line 55, particularly the discussions concerning the "co-marketer",

"redirecting", and "bounty payment");

  b) Graber et al. (US 5,717,860) (see at least the abstract, column 5 line 24 to column 7 line 14,

and column 10 line 38 to column 15 line 21, particularly the discussions concerning the "co-marketer",

"redirecting", and "bounty payment"); or

  c) Kirsch (see at least the abstract and the remainder of the document, with particular attention

being drawn to the "redirecting" operation and the "accounting data" logged).

  Referring to the claims, each of the references discloses a third-party which logs specific data

concerning the path which a user took to get to that location, and a redirection operation which sends

the user to their preferred location based on the advertisement which they "clicked" in the first place.

Serial Number: 08/729,188                                          Page 4

Art Unit: 2764


6.      The prior art made of record and not relied upon is considered pertinent to applicant's

disclosure.

        The cited but not applied references disclose various network based tracking systems.

Particular attention should be drawn to the non-patent literature concerning the products I/PRO  and

I/COUNT ("Research Firms Strive for Web Tracking That Counts") and the product Lilypad

("Streams Readies Release of Breakthrough Internet Media Planning and Assessment").

7.      Any inquiry concerning this communication or earlier communications from the examiner
should be directed to Eric Stamber whose telephone number is (703) 305-8469.  The examiner can
normally be reached Monday-Thursday from 6:30 AM to 5:00 PM.

        If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor,
Todd Voeltz, can be reached at (703) 305-9714.

        The fax number for Formal or Official faxes to the Electrical Cluster is (703) 308-9051 or
9052.  Draft or Informal faxes for this Art Unit can be submitted to (703) 308-5357.

        Any inquiry of a general nature or relating to the status of this application should be directed to
the Group receptionist whose telephone number is (703) 305-3900.


EWS
July 9, 1998

                                                    *Eric W. Stamber* (signature)
                                                    **Eric W. Stamber**
                                                    **Patent Examiner**
                                                    **Art Unit 2764**

| FORM PTO-892 | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | | SERIAL NO. 08/729,188 | GROUP ART UNIT 2764 | ATTACHMENT TO PAPER NO. | 2 |
|---|---|---|---|---|---|---|

## NOTICE OF REFERENCES CITED

| APPLICANT(S) |
|---|
| Daniel D. Wexler |

### U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | A | 5220655 | 6/93 | Tsutsui | 395 | 200.54 | |
| | B | 5359508 | 10/94 | Rossides | 705 | 30 | |
| | C | 5537314 | 7/96 | Kanter | 705 | 14 | |
| | D | 5557721 | 9/96 | Fite et al. | 705 | 14 | |
| | E | 5572643 | 11/96 | Judson | 395 | 200.48 | 10/95 |
| | F | 5712979 | 1/98 | Graber et al. | 395 | 200.54 | 9/95 |
| | G | 5717860 | 2/98 | Graber et al. | 395 | 200.57 | 9/95 |
| | H | 5740549 | 4/98 | Reilly et al. | 705 | 14 | 6/95 |
| | I | 5751956 | 5/98 | Kirsch | 395 | 200.33 | 2/96 |
| | J | | | | | | |
| | K | | | | | | |

### FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|---|---|
| | L | | | | | | |
| | M | | | | | | |
| | N | | | | | | |
| | O | | | | | | |
| | P | | | | | | |
| | Q | | | | | | |

### OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | |
|---|---|
| R | Streams Press Release, "Streams Readies Release of Breakthrough Internet Media Planning and Assessment", http://streams.com/press_release.html, 8/31/95, pp. 1-2. |
| S | "Research Firms Strive for Web Tracking That Counts", Interactive Marketing News, Vol. 2, No. 13, June 23, 1995. |
| T | W3 Organization, "HTTP Request Fields", http://www.w3.org/pub/WWW/Protocols/HTTP/HTRQ_Headers.html, 5/3/94, pp. 1-5 |

| EXAMINER Eric W. Stamber | DATE July 9, 1998 | |
|---|---|---|
| | | Form 8920MR2107 |

* A copy of this reference is not being furnished with this office action.
See Manual of Patent Examining Procedure, section 707.05(a).)ENDRECORD

PTO 948 (Rev. 10-94)    U.S. DEPARTMENT OF COMMERCE - Patent and Trademark Office    Application No. 729188

## NOTICE OF DRAFTSPERSON'S PATENT DRAWING REVIEW

The Draftsperson review all originally filed drawings regardless of whether they are designated as formal or informal. Additionally, patent Examiners will review the drawings for compliance with the regulations. Direct telephone inquiries concerning this review to the Drawing Review Branch, 703-305-8404.

The drawings filed (insert date) **10/11/96** are
A. ____ not objected to by the Draftsperson under 37 CFR 1.84 or 1.152.
B. ____ objected to by the Draftsperson under 37 CFR 1.84 or 1.152 as indicated below. The Examiner will require submission of new, corrected drawings when necessary. Corrected drawings must be submitted according to the instructions on the back of this Notice.

1. DRAWINGS. 37 CFR 1.84(a)  Acceptable categories of drawings:
   Black ink  Color.
   ____ Not black solid lines.
   ____ Color drawings are not acceptable until petition is granted.
   Fig(s)_____
2. PHOTOGRAPHS. 37 CFR 1.84(b)
   ____ Photographs are not acceptable until petition is granted.
   Fig(s)_____
   ____ Photographs not properly mounted (must use bristol board or
   photographic double-weight paper). Fig(s)_____
   ____ Poor quality (half-tone)  Fig(s)_____
3. GRAPHIC FORMS. 37 CFR 1.84 (d)
   ____ Chemical or mathematical formula not labeled as separate figure.
   Fig(s)_____
   ____ Group of waveforms not presented as a single figure, using
   common vertical axis with time extending along horizontal axis.
   Fig(s)_____
   ____ Individuals waveform not identified with a separate letter
   designation adjacent to the vertical axis. Fig(s)_____
4. TYPE OF PAPER. 37 CFR 1.84(e)
   ____ Paper not flexible, strong, white, smooth, nonshiny, and durable.
   Sheet(s)_____
   ____ Erasures, alterations, overwritings, interlineations, cracks, creases,
   and folds copy machine marks not accepted. Fig(s)_____
   ____ Mylar, velum paper is not acceptable (too thin). Fig(s)_____
5. SIZE OF PAPER. 37 CFR 1.84(f)  Acceptable sizes:
   ____ 21.6 cm. by 35.6 cm. (8 1/2 by 14 inches)
   ____ 21.6 cm. by 33.1 cm. (8 1/2 by 13 inches)
   ____ 21.6 cm. by 27.9 cm. (8 1/2 by 11 inches)
   ____ 21.0 cm by 29.7 cm. (DIN size A4)
   ____ All drawing sheets not the same size  Sheet(s)_____
   ____ Drawing sheet not an acceptable size  Sheet(s)_____
6. MARGINS  37 CFR 1.84(g)  Acceptable margins:

Paper size

| | 21 cm X 15.6 cm | 21.6 cm X 33.1 cm | 21.6 cm X 27.9 cm | 21.0 cm X 29.7 cm |
| | (8 1/2 X 14 inches) | (8 1/2 X 13 inches) | (8 1/2 X 11 inches) | (DIN Size A4) |
| T (Top) 1 cm (2") | 2.5 cm (1") | 2.1 cm (1") | 2.5cm |
| L (Left) (1/4") | 64 cm (1/4") | 64 cm (1/4") | 2.5 cm |
| R (Right) (1/4") | 64 cm (1/4") | 64 cm (1/4") | 1.5 cm |
| B (Bottom) (1/4") | 64 cm (1/4") | 64 cm (1/4") | 1.0 cm |

* begins do not conform to chart above
sheets)
____ Top (T) ____ Left (L) ____ Right (R) ____ Bottom (B)
7. VIEWS  37 CFR 1.84(h)
   REMINDER· Specification may require revision to correspond to
   drawing changes.
   ____ All views not grouped together. Fig(s)_____
   ____ Views connected by projection lines or lead lines.
   Fig(s)_____
   ____ Partial views.  37 CFR 1.84(h) 2

____ View and enlarged view not labled separately or properly
   Fig(s)_____
   ____ Sectional views. 37 CFR 1.84 (h) 3
   ____ Hatching not indicated for sectional portions of an object.
   Fig(s)_____
   ____ Cross section not drawn same as view with parts in cross- section
   with regularly spaced parallel oblique strokes. Fig(s)_____
8. ARRANGEMENT OF VIEWS  37 CFR 1.84(i)
   ____ Words do not appear on a horizontal, left-to-right fashion when
   page is either upright or turned so that the top becomes the right
   side, except for graphs. Fig(s)_____
9. SCALE.  37 CFR 1.84(k)
   ____ Scale not large enough to show mechanism with crowding
   when drawing is reduced in size to two-thirds in reproduction
   Fig(s)_____
   ____ Indication such as "actual size" or scale 1/2" not permitted
   Fig(s)_____
10. CHARACTER OF LINES, NUMBERS, & LETTERS.  37 CFR 1.84(l)
   ✓ Lines, numbers & letters not uniformly thick and well defined,
   clean, durable, and black (except for color drawings)
   Fig(s) 1 - 5
11. SHADING.  37 CFR 1.84(m)
   ____ Solid black shading areas not permitted
   Fig(s)_____
   ____ Shade lines, pale, rough and blurred. Fig(s)_____
12. NUMBERS, LETTERS, & REFERENCE CHARACTERS.  37 CFR 1.84(p)
   ✓ Numbers and reference characters not plain and legible  37 CFR
   1.84(p)(l)  Fig(s)_____
   ____ Numbers and reference characters not oriented in same direction
   as the view. 37 CFR 1.84(p)(l)  Fig(s)_____
   ____ English alphabet not used. 37 CFR 1.84(p)(2)
   Fig(s)_____
   ____ Numbers, letters, and reference characters do not measure at least
   .32 cm (1/8 inch) in height. 37 CFR(p)(3)
   Fig(s)_____
13. LEAD LINES  37 CFR 1.84(q)
   ____ Lead lines cross each other. Fig(s)_____
   ____ Lead lines missing. Fig(s)_____
14. NUMBERING OF SHEETS OF DRAWINGS.  37 CFR 1.84(t)
   ____ Sheets not numbered consecutively, and in Arabic numerals,
   beginning with number 1. Sheet(s)_____
15. NUMBER OF VIEWS  37 CFR 1.84(u)
   ____ Views not numbered consecutively, and in Arabic numerals,
   beginning with number 1. Fig(s)_____
   ____ View numbers not preceded by the abbreviation Fig
   Fig(s)_____
16. CORRECTIONS  37 CFR 1.84(w)
   ____ Corrections not made from prior PTO-948.
17. DESIGN DRAWING  37 CFR 1.152
   ____ Surface shading shown not appropriate  Fig(s)_____
   ____ Solid black shading not used for color contrast
   Fig(s)_____

COMMENTS:

Serial No. 08/729,188                                                              D.D. Wexler 1

# IN THE UNITED STATES
# PATENT AND TRADEMARK OFFICE

**Patent Application**

| | |
|---|---|
| **Inventor:** | Daniel D. Wexler |
| **Case:** | 1 |
| **Serial No.:** | 08/729,188 |
| **Filing Date:** | Oct. 11, 1996 |
| **Group Art Unit:** | 2764 |
| **Examiner:** | E.W. Stamber |
| **Title:** | Third Party On-Line Accounting System and Method Therefor |

> **Certificate of Mailing**
>
> I hereby certify that this correspondence is being deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to: Assistant Commissioner for Patents, Washington, D.C. 20231 on November 13, 1998
>
> Name of person signing this certificate: Jason Paul DeMont
> Signature _____ 11/13/98

ASSISTANT COMMISSIONER FOR PATENTS
WASHINGTON, D.C. 20231

**RECEIVED**

NOV 25 1998

Group 2700

SIR:

## PETITION FOR EXTENSION OF TIME UNDER 37 C.F.R. 1.136

Applicants respectfully petitions the Commissioner of Patents and Trademarks to extend the time for response for the Office action dated July 13, 1998 for one (1) month from October 13, 1998 to November 13, 1998.

A check in the amount of $55.00 (applicant is a SMALL ENTITY) is included to cover the cost of the extension. Duplicate copies of this petition are enclosed.

./23/1998 AIBRAHIM 00000035 08729188
1 FC:215                      55.00 OP

Respectfully,

By _____
Jason Paul DeMont
Attorney for Applicants
Reg. No. 35,793
908-903-1255

Date: 11/15/98
DeMont & Breyer, L.L.C.
244 English Place
Basking Ridge, NJ  07920-2744

- 1 -

GP 2764 $

D.D. Wexler 1



Serial No. 08/729,188

NOV 18 1998

Patent Application

# IN THE UNITED STATES
# PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| **Inventor:** | Daniel D. Wexler |
| **Case:** | 1 |
| **Serial No.:** | 08/729,188 |
| **Filing Date:** | Oct. 11, 1996 |
| **Group Art Unit:** | 2764 |
| **Examiner:** | E.W. Stamber |
| **Title:** | Third Party On-Line Accounting System and Method Therefor |

**Certificate of Mailing**

I hereby certify that this correspondence is being deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to: Assistant Commissioner for Patents, Washington, D.C. 20231 on November 13, 1998

Name of person signing this certificate: Jason Paul DeMont
Signature _____ 11/13/98

ASSISTANT COMMISSIONER FOR PATENTS
WASHINGTON, D.C. 20231

SIR:

RECEIVED

NOV 25 1998

Group 2700

Enclosed are the following papers relating to the above-named application for patent:

1) Transmittal Letter with Certificate of Mailing (3x)
2) Amendment with Certificate of Mailing- 7 Pages
3) Petition of Extension of Time with Certificate of Mailing (3x)
4) Check for $55.00 Accompanying Petition of Extension of Time

Respectfully,

By _____
Jason Paul DeMont
Attorney for Applicant
Reg. No. 35,793
908-903-1255

Date: 11/13/98
DeMont & Breyer, L.L.C.
244 English Place
Basking Ridge, NJ 07920-2744

- 1 -

WTS000045

Serial No. 08/729,188



**RECEIVED**

NOV 25 1998

Group 2700

# IN THE UNITED STATES
# PATENT AND TRADEMARK OFFICE

Patent Application

| | |
|---|---|
| **Inventor:** | Daniel D. Wexler |
| **Case:** | 1 |
| **Serial No.:** | 08/729,188 |
| **Filing Date:** | Oct. 11, 1996 |
| **Group Art Unit:** | 2764 |
| **Examiner:** | E.W. Stamber |
| **Title:** | Third Party On-Line Accounting System and Method Therefor |

**Certificate of Mailing**

I hereby certify that this correspondence is being deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to: Assistant Commissioner for Patents, Washington, D.C. 20231 on November 13, 1998

Name of person signing this certificate: Jason Paul DeMont
Signature _____ 11/13/98

ASSISTANT COMMISSIONER FOR PATENTS
WASHINGTON, D.C. 20231

SIR:

## AMENDMENT

In response to the Office action of July 13, 1998, please amend the above-identified application as follows:

### IN THE SPECIFICATION

| | | |
|---|---|---|
| Page 5, | line 9, | change "FIG. 1" to --FIG. 2--; |
| Page 6, | line 12, | change "a Internet" to --an Internet--; and |
| Page 7, | line 14, | change "Web site 5" to --Web site 17--. |

### IN THE CLAIMS

Amend claim 1:

1.  1. (Amended) A method for [on-line third party] accounting, wherein a first publisher having a
2.  first Web site and a second publisher having a second Web site each publish[es] advertising for an
3.  advertiser having a [second] third Web site, the method comprising [the steps of]:
4.      [(A)] receiving, at a [third party] fourth Web site, a first uniform resource locator [request
5.      signal] from a first user's Web browser, [which download signal] wherein the first uniform resource
6.      locator is [ultimately intended for the advertiser's Web site] obtained by the first user's Web browser
7.      from the first Web site where the first uniform resource locator is associated with advertising for the
8.      advertiser;

-1-

Serial No. 08/729,188                                                    D.D. Wexler 1

9      [(B)] [incrementing a counter] logging, at the fourth Web site, the receipt of the first uniform
10     resource locator [at the third party Web site], in response to [receiving] the receipt of the first uniform
11     resource locator [download request signal and logging information available from the Web browser];
12     [and]

13     [(C)] redirecting [the download request signal] , at the fourth Web site, the first user's Web
14     browser to the [advertiser's] third Web site in response to the receipt of the first download request
15     signal[.];
16          receiving, at the fourth Web site, a second uniform resource locator from a second user's Web
17     browser, wherein the second uniform resource locator is obtained by the second user's Web browser
18     from the second Web site where the second uniform resource locator is associated with advertising
19     for the advertiser;
20          logging, at the fourth Web site, the receipt of the second uniform resource locator in response
21     to receiving the second download request signal; and
22          redirecting, at the fourth Web site, the second user's Web browser to the third Web site in
23     response to the receipt of the second download request signal.

1      **2. (Amended)** The method of claim 1 wherein the advertising published by the first publisher is a
2      first banner [capable of forming a hypertext link] that is associated with the first uniform resource locator
3      [to the third party Web site], and the advertising published by the second publisher is a second banner that
4      is associated with the second uniform resource locator. [and further comprising the step of associating ,
5      with the banner, coding operable to form the hypertext link.]

1      **3. (Amended)** The method of claim 1 [wherein step (B)] further [comprises] comprising logging
2      at least one of either [the origin] an indicium of the identity of the first user and [the address] an indicium
3      of the identity of the [banner] first publisher.

1      **4. (Amended)** The method of claim 1, further comprising [the step of] preparing a report for one
2      or both of the advertiser and the first publisher, the report comprising [the number] each receipt of the
3      first [download request signals counted in step (B)] uniform resource locator by the fourth Web site.

1      **5. (Amended)** The method of claim 1 [wherein step (C) further comprises] further comprising
2      configuring a Hypertext Transfer Protocol server program at the [third party's] fourth Web site to issue a
3      302 redirect response when [a specific Uniform Resource Locator is requested] the first uniform resource
4      locator is received.

- 2 -

WTS000047

Serial No. 08/729,188                                                D.D. Wexler 1

6. (Amended) The method of claim 5 [wherein step (C) further comprises] further comprising editing a configuration file for the [HTTP] Hypertext Transfer Protocol server program.

7. (Amended) A method for third party accounting on a network [, the network consisting of] that comprises a plurality of nodes, wherein a [user at a first node views a first quantity of information provided by a second node for the benefit of a fourth fifth node,] first node and a second node each publish advertising for a third node, the method comprising [the steps of]:

[(A)] receiving, at a [third] fourth node, a first download request signal from [the first] a fifth node, which first request download signal is [ultimately intended for the fourth node] received by the fifth node from the first node;

[(B)] incrementing a counter in response to receiving the signal] logging, at the fourth node, the receipt of the first download signal; [and]

[(C)] redirecting the signal through the first node to the fourth node] transmitting from the fourth node a second request download signal to the fifth node, which second download request signal directs the fifth node towards the third node;

receiving, at the fourth node, a third download request signal from a sixth node, which third download request signal is received by the sixth node from the second node;

logging, at the fourth node, the receipt of the third download request signal; and

transmitting from the fourth node a fourth download request signal to the sixth node, which fourth download request signal directs the sixth node to the third node.

8. (Amended) The method of claim 7 wherein [step (A) further comprises receiving a download request signal.] the advertising published by the first node for the third node is a first banner that is associated with the first download request signal and the advertising published by the second node for the third node is a second banner that is associated with the second download request signal.

9. (Amended) [An on-line third party accounting system for counting the number of times that any one of a plurality of users, each using a Web browser to view a banner on a Web page, click on the banner to obtain additional information, wherein the banner is displayed by a first party for the benefit of a second party, the system comprising:

a communications link established between the Web browser of at least one user of the plurality clicking on the banner and a third party computer, the link established when the user clicks on the banner;

the third party computer, which computer is programmed to count download request signals received from the Web browser of the at least one user when the user clicks on the banner, each download

- 3 -

Serial No. 08/729,188                                                      D.D. Wexler 1

9    request signal corresponding to a click on the banner, the third party computer further programmed to

10   send a redirect signal to the Web browser of the at least one user; wherein,

11        once the redirect signal is received by the Web browser, a communications link is established

12   between the Web browser and a computer of the second party, and a signal is sent to the second party

13   computer, which second party computer responds by downloading said additional information to the Web

14   browser.]

15        A method comprising:

16        receiving a first uniform resource locator from a first browser, wherein the first uniform resource

17   locator is obtained by the first browser from a first Web site that publishes advertising for an advertiser;

18        logging, in response to the receipt of the first uniform resource locator, the receipt of the first

19   uniform resource locator;

20        transmitting, in response to the receipt of the first uniform resource locator, a second uniform

21   resource locator to the first browser, wherein the second uniform resource locator is associated with a

22   second Web site that is associated with the advertiser;

23        receiving a third uniform resource locator from a second browser, wherein the third uniform

24   resource locator is obtained by the second browser from a third Web site that publishes advertising for the

25   advertiser;

26        logging, in response to the receipt of the third uniform resource locator, the receipt of the third

27   uniform resource locator; and

28        transmitting a fourth uniform resource locator to the second browser, wherein the fourth uniform

29   resource locator is associated with the second Web site.

1    **10. (Add)** The method of claim 9 wherein the first uniform resource locator is uniquely

2    associated with the first Web site and the second Web site, and wherein the third uniform resource locator

3    is uniquely associated with the second Web site and the third Web site.

1    **11. (Add)** The method of claim 9 wherein the first uniform resource locator is associated with a

2    first banner that is published by the first Web site and that is advertising for the advertiser and wherein the

3    third uniform resource locator is associated with a second banner that is published by the third Web site

4    and that is also advertising for the advertiser.

## REMARKS

The specification has been amended to correct inadvertent typographical errors.

- 4 -

Serial No. 08/729,188                                          D.D. Wexler 1

Claims 1-9 were examined and rejected under 35 U.S.C. 103.  Claims 1-9 have been amended to clarify the distinction between the present invention and the prior art and claims 10 and 11 have been added.  Therefore, reconsideration is respectfully requested in light of the above amendments and the following remarks.

### Objection to the Disclosure

The Office action objected to the disclosure because of the following informalities:

1. At page 5, line 9, the reference to "FIG. 1" should instead have been to "FIG. 2."  The specification has been amended accordingly.
2. At page 7, line 14, the phrase "Web site 5" should be "Web site 17."  The specification has been amended accordingly.

The applicant wishes to thank Examiner Stamber for his careful proofreading of the specification.

### Objection to Claims 3, 5 and 9

The Office action objected to claims 3, 5, and 9 under 37 C.F.R. 1.75(a) and MEP 608.01(i).  In particular:

Claim 3 has been objected to because language in the claim could be read to suggest that it should be dependent on claim 2, when, in fact, it is dependent on claim 1.  The claim has been amended to eliminate any ambiguity.

In Claim 5, the acronym "HTTP" was objected to and has been replaced with "Hypertext Transfer Protocol."

In Claim 9, each mention of "the user" after "the at least one user" confuses the issue of proper antecedent basis.  Claim 9 has been amended so as to make this objection moot.

### 35 U.S.C. 102 Rejection of Claims 1-9

Claims 1-9 were rejected under 35 U.S.C. 102(e) as being anticipated by any one of the following three references:

1. T.E. Graber et al., U.S. Patent 5,712,979, issued Jan. 27, 1998 (hereinafter "**Graber I**");
2. T.E. Graber et al., U.S. Patent 5,717,860, issued Feb. 10, 1998 (hereinafter "**Graber II**"); and
3. S.T. Kirsch, U.S. Patent 5,751,956, issued May 12, 1998 (hereinafter "**Kirsch**").

After studying the references, the claims have been amended to clarify the distinction between the present invention and the prior art.  In light of these amendments, however, the applicant respectfully submits that the claims are now allowable.

- 5 -

WTS000050

Serial No. 08/729,188                                                           D.D. Wexler 1

Independent claims 1, 7 and 9, as amended, now recite, a node or Web site in a network that is involved in the interplay of signals being transmitted among a plurality of nodes on a network.  For example, in claim 1, the interplay is between:

- a first publisher (*e.g.*, Yahoo, Infoseek, *etc.*) having a Web site;
- a second publisher (*e.g.*, Excite, HotBot, *etc.*) having a Web site;
- an advertiser (*e.g.*, Amazon.com, Sears, Ebay.com, *etc.*) having a Web site,
- a first user who is attracted to the advertiser's Web site by advertising on the first publisher's Web site,
- a second user who is attracted to the advertiser's Web site by advertising on the second publisher's Web site, and
- a fourth Web site (*i.e.*, the claimed invention) that is capable of keeping track of <u>which publisher's web site is responsible for referring each user to the advertiser's Web site</u>.

In other words, when there are <u>multiple</u> publisher's who publish advertising for an advertiser, the present invention is ideal for tracking which publisher's Web site is responsible for referring each user to the advertiser's Web site.  This is neither taught nor suggested by any of the references, alone or in combination.

Furthermore, the present invention, as recited in the claims, has other characteristics that give it advantages over the prior art.

<u>First</u>, the present invention enables <u>one</u> site to perform the accounting for <u>multiple</u> publishers.  This is advantageous because the cost of the system can be amortized over more than one publisher and because it enables an advertiser to get all of its statistics from a single source.

<u>Second</u>, the present invention enables the accounting site to be owned and operated by an independent entity — one that is not associated with either the publisher or the advertiser.  A disadvantage with Internet accounting systems in the prior art is that the accounting is performed by either the publisher or by the advertiser.  And because the amount of money paid by the advertiser to the publisher is dependent on the accounting statistics collected, there is, or is perceived to be, the temptation by the one doing the accounting to bias the statistics in its favor.  In other words, advertisers don't completely trust publishers to be honest and publishers don't completely trust advertisers either.

The situation is analogous to that in television advertising.  Because television advertising fees are based on ratings, television stations don't trust advertisers to tally the ratings and advertisers don't trust television stations.  Therefore, the need existed for <u>an independent entity</u> to tally television ratings, which has been filled by the well-known A.C. Nielson Company.

- 6 -

WTS000051

Serial No. 08/729,188                                                D.D. Wexler 1

    In the same way that television advertising needed an independent entity to tally ratings, the Internet needs an independent entity to account for the referrals from publishers to advertisers. The present invention enables that independent entity.

    Third, the present invention can be used with, but does not require, "overloaded" URLs like Kirsch or specialized software like Kirsch, Graber I, and Graber II. Instead, the present invention is a vastly more elegant solution to the problems addressed by Kirsch, Graber I, and Graber II. Remarkably, the appropriate choice of domain names and appended path names provides the present invention with enough information to both: (i) collect the appropriate accounting statistics, and (ii) redirect the incoming URLs to the appropriate advertiser's site. This is significant because it means that an accounting system in accordance with the present invention can be constructed *and* operated for a fraction of the cost of a system like that of Kirsch, Graber I, or Graber II.

    Fourth, with comparison to Kirsch, Kirsch uses "overloaded" URLs which can cause infinite re-direction loops. (Kirsch Co. 9, lines 48-50). Because the present invention does not require overloaded URLs, the present invention does not have this potential problem.

    Therefore, because the independent claims, claims 1, 7 and 9, recite the interplay between multiple publishers, an advertiser, and an independent accounting Web site, the applicant respectfully submits that the claims, as amended, overcome the rejection and are now allowable.

    Because claims 2-6, 8 and 10-11 are dependent on either claim 1 or 7 or 9, the applicants respectfully submit that they too are allowable.

### Request for Reconsideration Pursuant to 37 C.F.R. 111

    Having responded to each and every ground for objection and rejection in the Office action mailed July 13, 1998, applicants request reconsideration of the instant application pursuant to 37 CFR 1.111 and request that the Examiner allow claims 1-11 and pass the application to issue.

                                        Respectfully,

                                        By
                                        Jason Paul DeMont
                                        Attorney for Applicant
                                        Reg. No. 35,793
                                        908-903-1255

Date: 11|13|98
DeMont & Breyer, L.L.C.
224 English Place
Basking Ridge, NJ 07920

                                        - 7 -



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|

08/729,188   10/11/96   WEXLER   D   3601

LM12/0209

|  | EXAMINER |
|---|---|
|  | STAMBER, E |
| ART UNIT | PAPER NUMBER |

WAYNE S BREYER
35 MALUS LANE
MIDDLETOWN NJ 07748

2765

DATE MAILED:   02/09/99

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

## OFFICE ACTION SUMMARY

☒ Responsive to communication(s) filed on _11/13/98_

☒ This action is **FINAL.**

☐ Since this application is in condition for allowance except for formal matters, **prosecution as to the merits is closed** in accordance with the practice under *Ex parte Quayle*, 1935 D.C. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire __3__ month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

**Disposition of Claims**

☒ Claim(s) _1-11_ is/are pending in the application.

Of the above, claim(s) _____ is/are withdrawn from consideration.

☐ Claim(s) _____ is/are allowed.

☒ Claim(s) _1-11_ is/are rejected.

☐ Claim(s) _____ is/are objected to.

☐ Claims _____ are subject to restriction or election requirement.

**Application Papers**

☐ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

☐ The proposed drawing correction, filed on _____ is ☐ approved ☐ disapproved.

☐ The specification is objected to by the Examiner.

☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

☐ All ☐ Some* ☐ None of the CERTIFIED copies of the priority documents have been

☐ received.

☐ received in Application No. (Series Code/Serial Number) _____.

☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

*Certified copies not received: _____

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

☒ Notice of Reference Cited, PTO-892

☐ Information Disclosure Statement(s), PTO-1449, Paper No(s). _____

☐ Interview Summary, PTO-413

☐ Notice of Draftsperson's Patent Drawing Review, PTO-948

☐ of Informal Patent Application, PTO-152

-- SEE OFFICE ACTION ON THE FOLLOWING PAGES --

• U S GPO 1996-4C9 290.40025

Serial Number: 08/729,188                                      Page 2

Art Unit: 2765


1.      This action is responsive to the amendment filed 11/13/98.  As per applicants request, claims 1-

9 have been amended and newly introduced claims 10 and 11 have been entered.  Claims 1-11 remain

pending.

2.      Applicant has corrected various inconsistencies previously noted in the disclosure, therefore

the objection to the disclosure for informalities is withdrawn.

3.      Claim 7 is objected to as failing to particularly point out and distinctly claim the subject matter

which applicant regards as his invention.  See 37 C.F.R. § 1.75(a) and M.P.E.P. § 608.01(I).

        The examiner has made several assumptions at this point of the examination, especially as it

relates to antecedent basis, that will be clear from reading the paragraphs concerning claim objections

below.  These assumptions concern the examiner's suggestions of alternative claim language which

appear to add a clearer understanding to the claims.  These assumptions are carried through the

remainder of the examination of the claimed limitations.  Applicant should inform the examiner in any

response to this office action if any of these assumptions are incorrect and make appropriate changes

to the claims.

        Correction of the following is required:

        Claim 7 line 6 mentions "first request download signal" when "first download request signal" is

more accurate and has been previously used.  Line 9 mentions "the first download signal" when "the

first download request signal" would be better.  Line 11 mentions "second request download signal"

when "second download request signal" is more accurate.

Serial Number: 08/729,188                                      Page 3

Art Unit: 2765

4.      Claims 1-6 are rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing

to particularly point out and distinctly claim the subject matter which applicant regards as the

invention.

        A. Claim 1 lines 14-15 mention "the first download request signal" when none has been

previously discussed, thus not only lacking proper antecedent basis in the claim but also being

confusing as the item is mentioned in such a way as to lead one to believe that it either should have

been mentioned before or was mentioned before, but using different terminology.  Lines 21 and 23

each mention "the second download request signal" when none was previously discussed, thus not

only lacking proper antecedent basis in the claim but also being confusing as the item is mentioned in

such a way as to lead one to believe that it either should have been mentioned before or was

mentioned before, but using different terminology.

        B. Claims 2-6 are rejected as being dependent on claim 1 discussed above.

5.      The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the

basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless —
>
> (e) the invention was described in a patent granted on an application for patent by another filed in the United States
> before the invention thereof by the applicant for patent, or on an international application by another who has fulfilled
> the requirements of paragraphs (1), (2), and (4) of section 371© of this title before the invention thereof by the
> applicant for patent.

6.      Claims 1-11 are rejected under 35 U.S.C. 102(e) as being clearly anticipated by any single one

of the following:

        a) Graber et al. (US 5,712,979) (see at least the abstract, column 5 line 25 to column 7 line 15,

and column 10 line 45 to column 15 line 55, particularly the discussions concerning the "co-marketer",

"redirecting", and "bounty payment");

Serial Number: 08/729,188                                              Page 4

Art Unit: 2765

     b) Graber et al. (US 5,717,860) (see at least the abstract, column 5 line 24 to column 7 line 14, and column 10 line 38 to column 15 line 21, particularly the discussions concerning the "co-marketer", "redirecting", and "bounty payment");

     c) Kirsch (see at least the abstract and the remainder of the document, with particular attention being drawn to the "redirecting" operation and the "accounting data" logged); or

     d) Graber et al. (US 5,812,769) (see at least the abstract, column 5 line 25 to column 7 line 15, and column 10 line 39 to column 14 line 44, particularly the discussions concerning the "co-marketer", "redirecting", and "bounty payment").

     Referring to the claims, each of the references discloses a third-party which logs specific data concerning the path which a user took to get to that location, and a redirection operation which sends the user to their preferred location based on the advertisement which they "clicked" in the first place. Note, the "publisher", "Web site", and "advertiser" language of the claims does not contribute a patentable distinction over the prior art since these items are inherent in the World Wide Web.

7.    Applicant's arguments filed 11/13/98 have been fully considered but they are not persuasive.

     As per the rejections under 35 USC 102(e) as being clearly anticipated by any of the, now, three separate Graber et al. references or the single Kirsch reference, the rejections are maintained and the new Graber et al. reference is included and all reference rejections are extended to cover the newly introduced claims 10 and 11, as applicant's arguments are not persuasive.

     Applicant, at the top of page 6, goes through a lengthy example of the underlying method using real world examples of the various Web sites, publishers and advertisers, however the examiner submits that this example, and the claim limitations to which it corresponds, are clearly disclosed by each of the references in just the abstract of each reference:

WTS000056

Serial Number: 08/729,188                                          Page 5

Art Unit: 2765

a) Graber et al. (US 5,712,979):

"A method and apparatus for tracking the navigation path of a user that has been
directed to a second site on the WWW from a first site on the WWW.  A URL is received at
the second WWW site when the user is directed from the first site to the second site.  At the
second WWW site, information representative of an identity of the first WWW site is captured
by identifying a first code in the URL.  A destination web page is determined for the user, and
a revised destination web page is formed by attaching a second code representative of the
identity of the first WWW site into at least one selected web page link associated with the
destination web page.  The revised destination web page is then transmitted to the user."

b) Graber et al. (US 5,717,860):

"A method and apparatus for tracking the navigation path of a user that has been
directed to a second site on the World Wide Web (WWW) from a first site on the WWW.  The
first site has a universal resource locator (URL) symbol for uniquely identifying an address of
the first site on the WWW, and the second site has a URL symbol for uniquely identifying an
address of the second site on the WWW.  A composite URL symbol is received at the second
WWW site when the user is directed from the first site to the second site.  The composite URL
symbol has a first portion corresponding to the URL symbol of the second site, and a second
portion that includes information corresponding to the identity of the first site.  Information
representative of the identity of the first WWW site is captured at the second WWW site from
the second portion of the composite URL.  The identity of the first WWW site is then
determined at the second WWW site by comparing information from the second portion of the
composite URL to a table having a plurality of entries each of which is representative of a
known WWW site."

c) Kirsch:

"A Web server computer system provides for server based controlled management over
a client reference to a resource locator independently selected by a client computer system and

referencing a server external Web server.  The Web server system provides a client system with a predetermined URL reference to the Web server system encoded with predetermined redirection and accounting data including a reference to a second server system.  On receipt by the first Web server system of the predetermined URL reference from the client system, the predetermined redirection and accounting data is decoded from the predetermined URL and processed by the Web server system to provide the client system with a redirection message including the reference to the second server system.  The accounting data is processed by the Web server system and resulting data is selectively stored by the Web server system."

d) Graber et al. (US 5,812,769):

"A method and apparatus for redirecting a user from a first location on the WWW to a second location on the WWW, wherein relative URL addressing is used during the redirecting process.  A signal is received from the first location indicating that the user wishes to move from the first location on the WWW to the second location on said WWW.  In response to the signal, a current URL representing an address of the first location on the WWW and a destination URL portion representative of an address of the second location on the WWW are passed to a redirecting means.  The current URL includes first and second portions.  A destination URL is formed with redirecting means by substituting the destination URL portion in place of the second portion in the current URL, wherein the destination URL represents a relative address of the second location on the WWW.  The user is then moved from the first location on the WWW to the second location on the WWW in accordance with the destination URL formed by the redirecting means."

It is clear from at least these abstracts and the other referenced portions of each individual reference that applicant's claimed limitations are met by the references.

Applicant next argues, on the remainder of page 6 through 7, that the present invention has other characteristic advantages over the prior art.

Serial Number: 08/729,188                                          Page 7

Art Unit: 2765

     The first being that "the present invention enables <u>one</u> site to perform the accounting for

<u>multiple</u> publishers.", however the "redirecting" site of each of the references clearly performs this

same function.

     The second being that "the present invention enables the accounting site to be owned and

operated by an independent entity -- one that is not associated with either the publisher or the

advertiser.", however the examiner submits that the "redirecting site" of the references is an

independent entity.  Reference is made to a "co-marketer", however this is only because they have the

Web site URL on their page.  Nevertheless, this argument is moot since the claimed limitations do not

reflect such an argument.

     The third being that "the present invention can be used with, but does not require, 'overloaded'

URLs like Kirsch or specialized software like Kirsch, Graber I, and Graber II.", however this

argument is not readily understood as the "redirecting" operation of either Kirsch or any of the Graber

et al. references acts to record accounting data, and then redirect the user to the Web site which they

requested in the same fashion as claimed and described by applicant.  The "overloaded URLs"

argument is moot as the claimed limitations do not reflect such an argument.

     The fourth being that "with comparison to Kirsch, Kirsch uses 'overloaded' URLs which can

cause infinite redirection loops.", again it is not apparent how this "overloaded URLs" argument

applies to the claims.  The examiner submits, and will state again, that each of the references discloses

a third-party which logs specific data concerning the path which a user took to get to that location.

and a redirection operation which sends the user to their preferred location based on the advertisement

which they "clicked" in the first place.

Serial Number: 08/729,188                                    Page 8

Art Unit: 2765

      For these reasons the rejection is maintained as set forth in section 6 above.

8.     Applicant's amendment necessitated the new ground(s) of rejection presented in this Office

action. Accordingly, **THIS ACTION IS MADE FINAL.** See MPEP § 706.07(a). Applicant is

reminded of the extension of time policy as set forth in 37 CFR 1.136(a).

      A shortened statutory period for reply to this final action is set to expire THREE MONTHS

from the mailing date of this action. In the event a first reply is filed within TWO MONTHS of the

mailing date of this final action and the advisory action is not mailed until after the end of the THREE-

MONTH shortened statutory period, then the shortened statutory period will expire on the date the

advisory action is mailed, and any extension fee pursuant to 37 CFR 1.136(a) will be calculated from

the mailing date of the advisory action. In no event, however, will the statutory period for reply expire

later than SIX MONTHS from the date of this final action.

9.     Any inquiry concerning this communication or earlier communications from the examiner
should be directed to Eric Stamber whose telephone number is (703) 305-8469. The examiner can
normally be reached Monday-Thursday from 6:30 AM to 4:00 PM.

      If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor,
Allen MacDonald, can be reached at (703) 305-9708.

      The fax number for Formal or Official faxes to Technology Center 2700 is (703) 308-9051 or
9052. Draft or Informal faxes for this Art Unit can be submitted to (703) 308-5397.

      Any inquiry of a general nature or relating to the status of this application should be directed to
the Group receptionist whose telephone number is (703) 305-3900.

EWS
February 4, 1999

*Eric W. Stamber*

**Eric W. Stamber**
**Primary Examiner**
**Art Unit 2765**

WTS000060

| FORM PTO-892 | U.S. DEPARTMENT OF COMMERCE PATENT AND TRADEMARK OFFICE | SERIAL NO. 08/729,188 | GROUP ART UNIT 2765 | ATTACHMENT TO PAPER NO. | 5 |
|---|---|---|---|---|---|

## NOTICE OF REFERENCES CITED

APPLICANT(S)

Daniel D. Wexler

### U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUB-CLASS | FILING DATE IF APPROPRIATE |
|---|---|---|---|---|---|---|---|
| | A | 5812769 | 9/98 | Graber et al. | 705 | 14 | 9/95 |
| | B | | | | | | |
| | C | | | | | | |
| | D | | | | | | |
| | E | | | | | | |
| | F | | | | | | |
| | G | | | | | | |
| | H | | | | | | |
| | I | | | | | | |
| | J | | | | | | |
| | K | | | | | | |

### FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|---|---|
| | L | | | | | | |
| | M | | | | | | |
| | N | | | | | | |
| | O | | | | | | |
| | P | | | | | | |
| | Q | | | | | | |

### OTHER REFERENCES (Including Author, Title, Date, Pertinent Pages, Etc.)

| | | |
|---|---|---|
| | R | |
| | S | |
| | T | |

| EXAMINER Eric W. Stamber | DATE February 4, 1999 | |
|---|---|---|

Form 892BMR2107

\* A copy of this reference is not being furnished with this office action.
See Manual of Patent Examining Procedure, section 707.05(a). )ENDRECORD



**UNITED S[ ]ES DEPARTMENT OF COMMERCE**
**Patent and [T]rademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|
| 08/729,188 | 10/11/96 | WEXLER | 3601 |

| EXAMINER |
|---|
| STAMBER |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2765 | 6 |

DATE MAILED:

## INTERVIEW SUMMARY

All participants (applicant, applicant's representative, PTO personnel):

(1) _ERIC STAMBER (PRIMARY EXAMINER)_ (3) _DANIEL WEXLER (APPLICANT)_

(2) _JASON DEMONT (APPLICANTS REP.)_ (4) _____

Date of Interview: _4/29/99_

Type: ☐ Telephonic ☒ Personal (copy is given to ☐ applicant ☐ applicant's representative).

Exhibit shown or demonstration conducted: ☒ Yes ☐ No   If yes, brief description: _DRAWING EXAMPLES OF_
_SYSTEM OF INSTANT INVENTION VS. KIRSCH VS. GRABER_

Agreement ☐ was reached. ☒ was not reached.

Claim(s) discussed: _1 (REPRESENTATIVE)_

Identification of prior art discussed: _KIRSCH + THREE SEPARATE GRABER ET AL._
_REFERENCES_

Description of the general nature of what was agreed to if an agreement was reached, or any other comments: _APPLICANT_
_WILL SUBMIT AFTER FINAL AMENDMENT TO CORRECT_
_112 2ND ISSUE + REMARKS POINTED TOWARD THE_
_SPECIFIC EXAMPLES DEMONSTRATED, EXAMINER WILL_
_REVIEW PRIOR ART IN VIEW OF THIS DISCUSSION/REMARKS_
_AND DEMONSTRATION._

(A fuller description, if necessary, and a copy of the amendments, if available, which the examiner agreed would render the claims allowable must be attached. Also, where no copy of the amendments which would render the claims allowable is available, a summary thereof must be attached.)

1. ☒ It is not necessary for applicant to provide a separate record of the substance of the interview.

Unless the paragraph above has been checked to indicate to the contrary. A FORMAL WRITTEN RESPONSE TO THE LAST OFFICE ACTION IS NOT WAIVED AND MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW. (See MPEP Section 713.04). If a response to the last Office action has been filed, APPLICANT IS GIVEN ONE MONTH FROM THIS INTERVIEW DATE TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.

2. ☐ Since the Examiner's interview summary above (including any attachments) reflects a complete response to each of the objections, rejections and requirements that may be present in the last Office action, and since the claims are now allowable, this completed form is considered to fulfill the response requirements of the last Office action. Applicant is not relieved from providing a separate record of the interview unless box 1 above is also checked.

Examiner Note: You must sign this form unless it is an attachment to another form.

FORM PTOL-413 (REV 1-96)

* U.S. GPO 1996-410-232/40651





GRABER

USER

www.llbean.com INFO

INFO
SEEK

CO-MARKETOR

("CM")

3rd PARTY

www.llbean.com YAHOO

YAHOO

CO-MARKETER

("CM")

LL
BEAN

KEEPS   STATS

WHY DOES GRABER

WTS000064

May-03-99 09:27A                                                              P.03

Serial No 08/729,188                                                   D D Wexler 1

## IN THE UNITED STATES
## PATENT AND TRADEMARK OFFICE

Official

**Patent Application**

| | |
|---|---|
| **Inventor:** | Daniel D. Wexler |
| **Case:** | 1 |
| **Serial No.:** | 08/729,188 |
| **Filing Date:** | Oct. 11, 1996 |
| **Group Art Unit:** | 2764 |
| **Examiner:** | E.W. Stamber |
| **Title:** | Third Party On-Line Accounting System and Method Therefor |

Certificate of Transmission

I hereby certify that this correspondence is being facsimile transmitted to the Patent and Trademark Office (Fax No. 703-305-0040) on May 3, 1999.

Name of person signing this certificate: Jason Paul DeMont
Signature

ASSISTANT COMMISSIONER FOR PATENTS
WASHINGTON, D.C. 20231

SIR:

FAX RECEIVED

MAY 0 3 1999

Group 2700

### CHANGE OF CORRESPONDENCE ADDRESS

In accordance with the Manual of Patent Examining Procedure, § 601.03, please change the mailing address for all correspondence in the above-identified application to:

> Jason Paul DeMont
> DeMont & Breyer, L.L.C.
> 244 English Place
> Basking Ridge, NJ 07920

Respectfully,

By
Jason Paul DeMont
Attorney for Applicant(s)
Reg. No. 35,793
908-903-1255

Date: 5/3/99
DeMont & Breyer, L.L.C.
244 English Place
Basking Ridge, NJ 07920

- 1 of 1-

WTS000065

May-03-99  09:27A                                                          P.01

## Official

**FAX RECEIVED**

MAY 0 5 1999

### DeMONT & BREYER, L.L.C.
#### PATENT ATTORNEYS

Group 2700

JASON PAUL DE MONT*          244 ENGLISH PLACE          MIDDLETOWN OFFICE
WAYNE S. BREYER**         BASKING RIDGE, NJ  07920        35 MALUS LANE
                                                      MIDDLETOWN, NJ 07748

                          TEL: 908-903-1255            TEL: 732-706-3497
                          FAX: 908-903-1256            FAX: 732-706-9098
* ONLY ADMITTED IN PA     http://www.dblaw.com
** ALSO ADMITTED IN NY

---

## F A X   C O V E R   S H E E T

---

**TO:**      Examiner Eric Stamber          **DATE:**   May 3, 1999

**PHONE:**   703-305-8469                   **FAX:**    703-305-0040

**FROM:**    J. P. DeMont

**RE:**      Serial No. 08/729,188

**Number of pages including cover sheet: 8**

---

WTS000066

May-03-99 09:27A                                                    P.04

Serial No. 08/729,188                                          D.D. Wexler 1

## IN THE UNITED STATES
## PATENT AND TRADEMARK OFFICE

**Official**

**Patent Application**

| | |
|---|---|
| **Inventor:** | Daniel D. Wexler |
| **Case:** | 1 |
| **Serial No.:** | 08/729,188 |
| **Filing Date:** | Oct. 11, 1996 |
| **Group Art Unit:** | 2764 |
| **Examiner:** | E.W. Stamber |
| **Title:** | Third Party On-Line Accounting System and Method Therefor |

Certificate of Transmission

I hereby certify that this correspondence is being facsimile transmitted to the Patent and Trademark Office (Fax No 703-305-0040) on May 3, 1999.

Name of person signing this certificate: Jason Paul DeMont
Signature

ASSISTANT COMMISSIONER FOR PATENTS
WASHINGTON, D.C. 20231

SIR:

**FAX RECEIVED**

MAY 0 3 1999

Group 2700

## AMENDMENT

In response to the Office action of February 9, 1999, please amend the above-identified application as follows:

**IN THE CLAIMS**

Amend claim 1:

1    1. (Twice Amended) A method for accounting, wherein a first publisher having a first Web site

2    and a second publisher having a second Web site each publish advertising for an advertiser having a third

3    Web site, the method comprising:

4    receiving, at a fourth Web site, a first uniform resource locator from a first user's Web

5    browser, wherein the first uniform resource locator is obtained by the first user's Web browser from

6    the first Web site [where] **and wherein** the first uniform resource locator is associated with

7    advertising for the advertiser;

8    logging, at the fourth Web site, the receipt of the first uniform resource locator, in response to

9    the receipt of the first uniform resource locator;

10    redirecting, at the fourth Web site, the first user's Web browser to the third Web site in

11    response to the receipt of the first [download request signal] **uniform resource locator**;

12    receiving, at the fourth Web site, a second uniform resource locator from a second user's Web

13    browser, wherein the second uniform resource locator is obtained by the second user's Web browser

– 1 of 5 –

Serial No. 08/729,188                                    D.D. Wexler 1

14    from the second Web site [where] **and wherein** the second uniform resource locator is associated

15    with advertising for the advertiser;

16         logging, at the fourth Web site, the receipt of the second uniform resource locator, in

17    response to receiving the second [download request signal] **uniform resource locator**; and

18         redirecting, at the fourth Web site, the second user's Web browser to the third Web site in

19    response to the receipt of the second [download request signal] **uniform resource locator.**

1    3. (Twice Amended) The method of claim 1 further comprising logging at least one of [either] an

2    indicium of the identity of the first user and an indicium of the identity of the first publisher.

1    7. (Twice Amended) A method for third party accounting on a network that comprises a plurality

2    of nodes, wherein a first node and a second node each publish advertising for a third node, the method

3    comprising:

4         receiving, at a fourth node, a first download request signal from a fifth node, which first

5    [request] download **request** signal is received by the fifth node from the first node;

6         logging, at the fourth node, the receipt of the first download **request** signal;

7         transmitting from the fourth node a second [request] download **request** signal to the fifth

8    node, which second download request signal directs the fifth node towards the third node;

9         receiving, at the fourth node, a third download request signal from a sixth node, which third

10   download request signal is received by the sixth node from the second node;

11        logging, at the fourth node, the receipt of the third download request signal; and

12        transmitting from the fourth node a fourth download request signal to the sixth node, which

13   fourth download request signal directs the sixth node to the third node.

## REMARKS

Claims 1-11 were examined and rejected under 35 U.S.C. 102 and 112, second paragraph, and
remain pending. Claims 1 and 7 were amended to address the 112, second paragraph, issues and claim 3
has been amended to delete a superfluous word.

The applicant wishes to thank Examiner Stamber for the interview at the USPTO last Thursday
and includes the following remarks, which summarize the discussion at the interview. Therefore,
reconsideration is respectfully requested in light of the above amendments and the following remarks.

### 35 U.S.C. 102 Rejection of Claims 1-9

- 2 of 5 -

Case 1:08-cv-03139-RRM -RER   Document 49-2   Filed 03/17/10   Page 70 of 94

Serial No. 08/729,188                                          D.D. Wexler 1

Claims 1-11 were rejected under 35 U.S.C. 102(e) as being anticipated by any one of the following four references:

> 1. T.E. Graber et al., U.S. Patent 5,712,979, issued Jan. 27, 1998 (hereinafter "**Graber I**");

> 2. T.E. Graber et al., U.S. Patent 5,717,860, issued Feb. 10, 1998 (hereinafter "**Graber II**");

> 3. T.E. Graber et al., U.S. Patent 5,812,769, issued Sep. 22, 1998 (hereinafter "**Graber III**"); and

> 4. S.T. Kirsch, U.S. Patent 5,751,956, issued May 12, 1998 (hereinafter "**Kirsch**").

The applicant respectfully traverses the rejection for the following reasons.

Independent claim 1 recites the interplay of signals that are transmitted between a browser (*e.g.*, Netscape Navigator, Internet Explorer, *etc.*) and a plurality of Web sites for the purpose of keeping track of which Web sites are responsible for directing the user of the browser to another Web site. For example, in claim 1, the interplay is between:

- a first publisher (*e.g.*, Yahoo, Infoseek, *etc.*) having <u>a first Web site</u>;

- a second publisher (*e.g.*, Excite, HotBot, *etc.*) having <u>a second Web site</u>;

- an advertiser (*e.g.*, Amazon.com, Sears, Ebay.com, *etc.*) having <u>a third Web site</u>,

- a first user having a Web browser who is attracted to the advertiser's Web site by advertising (*e.g.*, a banner, *etc.*) on the first publisher's (*e.g.*, Yahoo, Infoseek, *etc.*) Web site,

- a second user having a Web browser who is attracted to the advertiser's Web site by advertising on the second publisher's (*e.g.*, Excite, HotBot, *etc.*) Web site, and

- <u>a fourth Web site</u> (*i.e.*, the accounting Web site) that is capable of keeping track of which publisher's web site is responsible for referring each user to the advertiser's Web site.

It should be understood that the steps in claim 1 are all recited *from the perspective of the fourth Web site*. In other words, when there are <u>multiple</u> publisher's who publish advertising for a <u>single</u> advertiser, the present invention is ideal for tracking which publisher's Web site is responsible for referring each user to the advertiser's Web site. This is neither taught nor suggested by any of the references, alone or in combination.

In particular, the references neither teach nor suggest, alone or in combination, <u>this combination and interaction of four Web sites</u>.

Furthermore, the present invention, as recited in the claims, has other characteristics that give it advantages over the prior art.

<u>First</u>, the present invention enables <u>one</u> site to perform the accounting for <u>multiple</u> publishers for one advertiser. This is advantageous because the cost of a system in accordance with the present

    - 3 of 5 -

WTS000069

Serial No. 08/729,188                                        D.D. Wexler 1

invention can be amortized over more than one publisher and because it enables an advertiser to get all of
its statistics from a single source.

Second, the present invention enables the accounting site to be owned and operated by an
independent entity — one that is not associated with either the publisher or the advertiser. A
disadvantage with Internet accounting systems in the prior art is that the accounting is performed by either
the publisher or by the advertiser. And because the amount of money paid by the advertiser to the
publisher is dependent on the accounting statistics collected, there is, or is perceived to be, the temptation
by the one doing the accounting to bias the statistics in its favor. In other words, advertisers don't
completely trust publishers to be honest and publishers don't completely trust advertisers either.

For example, it is contemplated that the system of Kirsch is to be operated by a publisher (*e.g.*,
Infoseek, Yahoo, *etc.*) and the system of Graber I, Graber II and Graber III is to be operated by the
advertiser (*e.g.*, Amazon.com, ebay.com, *etc.*), but the present invention can be operated by an
independent entity that is neither the publisher nor the advertiser.

The situation is analogous to that in television advertising. Because television advertising fees
are based on ratings, television stations don't trust advertisers to tally the ratings and advertisers don't trust
television stations. Therefore, the need existed for an independent entity to tally television ratings, which
has been filled by the well-known A.C. Nielson Company.

In the same way that television advertising needed an independent entity to tally ratings, the
Internet needs an independent entity to account for the referrals from publishers to advertisers. The
present invention enables that independent entity.

Third, the present invention can be used with, but does not require, "overloaded" URLs like
Kirsch or specialized software like Kirsch, Graber I, Graber II and Graber III. Instead, the present
invention is a vastly more elegant solution to the problems addressed by Kirsch, Graber I, Graber II and
Graber III. Remarkably, the appropriate choice of domain names and appended path names provides the
present invention with enough information to both: (i) collect the appropriate accounting statistics, and
(ii) redirect the incoming URLs to the appropriate advertiser's site. This is significant because it means
that an accounting system in accordance with the present invention can be constructed *and* operated for a
fraction of the cost of a system like that of Kirsch, Graber I, Graber II or Graber III.

Fourth, with comparison to Kirsch, Kirsch uses "overloaded" URLs which can cause infinite re-
direction loops. (Kirsch Co. 9, lines 48-50). Because the present invention does not require overloaded
URLs, the present invention does not have this potential problem.

- 4 of 5 -

WTS000070

Serial No. 08/729,188                                             D.D. Wexler 1

Therefore, because the independent claims, claims 1, 7 and 9, recite the interplay between four sites: multiple publishers' sites, an advertiser's site, and an independent accounting site, the applicant respectfully submits that the claims, as amended, overcome the rejection and are now allowable.

Because claims 2-6, 8 and 10-11 are dependent on either claim 1 or 7 or 9, the applicants respectfully submit that they too are allowable.

### Request for Reconsideration Pursuant to 37 C.F.R. 111

Having responded to each and every ground for objection and rejection in the Office action mailed February 9, 1999, the applicant requests reconsideration of the instant application pursuant to 37 CFR 1.111 and requests that the Examiner allow claims 1-11 and pass the application to issue.

Respectfully,

By _____
Jason Paul DeMont
Attorney for Applicant
Reg. No. 35,793
908-903-1255

Date: 5|3|99
DeMont & Breyer, L.L.C.
224 English Place
Basking Ridge, NJ 07920

- 5 of 5 -

May-03-99 09:27A                                                        P.02

Serial No. 08/729,188                                        D.D. Wexler I

# IN THE UNITED STATES
## PATENT AND TRADEMARK OFFICE          Official

**Patent Application**

Inventor:        Daniel D. Wexler

Case:            1

Serial No.:      08/729,188

Filing Date:     Oct. 11, 1996

Group Art Unit:  2764

Examiner:        E.W. Stamber

Title:           Third Party On-Line Accounting System and Method Therefor

| Certificate of Transmission |
|---|
| I hereby certify that this correspondence is being facsimile transmitted to the Patent and Trademark Office (Fax No. 703-305-0040) on May 3, 1999. |
| Name of person signing this certificate: Jason Paul DeMont |
| Signature |

**FAX RECEIVED**

MAY 0 3 1999

Group 2700

ASSISTANT COMMISSIONER FOR PATENTS
WASHINGTON, D.C. 20231

SIR:

Enclosed are the following papers relating to the above-named application for patent:

    1)  Transmittal Letter with Certificate of Transmission
    2)  Amendment with Certificate of Transmission - 5 Pages
    3)  Change of Correspondence Address with Certificate of Transmission

                    Respectfully,

                    By
                    Jason Paul DeMont
                    Attorney for Applicant
                    Reg. No. 35,793
                    908-903-1255

Date:  6 3 99
DeMont & Breyer, L.L.C.
244 English Place
Basking Ridge, NJ 07920-2744

- 1 of 1 -



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| APPLICATION NUMBER | FILING DATE | FIRST NAMED APPLICANT | ATTORNEY DOCKET NO. |
|---|---|---|---|

| EXAMINER |
|---|

| ART UNIT | PAPER NUMBER |
|---|---|
|  | 9 |

DATE MAILED:

This is a communication from the examiner in charge of your application.
COMMISSIONER OF PATENTS AND TRADEMARKS

## NOTICE OF ALLOWABILITY

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance and Issue Fee Due or other appropriate communication will be mailed in due course.

☒ This communication is responsive to _THE AFTER FINAL AMENDMENT OF 5/3/99_

☒ The allowed claim(s) is/are _1 - 11_

☐ The drawings filed on _____ are acceptable.

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

  ☐ All ☐ Some* ☐ None of the CERTIFIED copies of the priority documents have been

    ☐ received.

    ☐ received in Application No. (Series Code/Serial Number) _____.

    ☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

*Certified copies not received: _____

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE **THREE MONTHS** FROM THE "DATE MAILED" of this Office action. Failure to timely comply will result in ABANDONMENT of this application. Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

☐ Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient. A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.

☒ Applicant MUST submit NEW FORMAL DRAWINGS

  ☐ because the originally filed drawings were declared by applicant to be informal.

  ☒ including changes required by the Notice of Draftperson's Patent Drawing Review, PTO-948, attached hereto or to Paper No. _2_.

  ☐ including changes required by the proposed drawing correction filed on _____, which has been approved by the examiner.

  ☐ including changes required by the attached Examiner's Amendment/Comment.

**Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the reverse side of the drawings. The drawings should be filed as a separate paper with a transmittal letter addressed to the Official Draftperson.**

☐ Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

Any response to this letter should include, in the upper right hand corner, the APPLICATION NUMBER (SERIES CODE/SERIAL NUMBER). If applicant has received a Notice of Allowance and Issue Fee Due, the ISSUE BATCH NUMBER and DATE of the NOTICE OF ALLOWANCE should also be included.

**Attachment(s)**

☐ Notice of References Cited, PTO-892

☐ Information Disclosure Statement(s), PTO-1449, Paper No(s). _____

☐ Notice of Draftperson's Patent Drawing Review, PTO-948

☐ Notice of Informal Patent Application, PTO-152

☐ Interview Summary, PTO-413

☐ Examiner's Amendment/Comment

☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material

☐ Examiner's Statement of Reasons for Allowance

**ERIC W. STAMBER**
**PRIMARY EXAMINER**

PTOL-37 (Rev. 10/95)

*U.S. GPO 1997-417-381/52714



**UNITED STATES DEPARTMENT OF COMMERCE**
**Patent and Trademark Office**

## NOTICE OF ALLOWANCE AND ISSUE FEE DUE

| APPLICATION NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | DATE MAILED |
|---|---|---|---|---|
| | | | | |

First Named Applicant   WEXLER,   35 USC 154(b) term ext.   0 Days.

TITLE OF INVENTION   INTRA-PARTY ON-LINE ACCOUNTING SYSTEM AND METHOD THEREFOR

| ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|
| | 705-014.000 | 180 | UTILITY | YES | $605.00 | |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT.**
**_PROSECUTION ON THE MERITS IS CLOSED._**

**THE ISSUE FEE MUST BE PAID WITHIN _THREE MONTHS_ FROM THE MAILING DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. _THIS STATUTORY PERIOD CANNOT BE EXTENDED._**

### HOW TO RESPOND TO THIS NOTICE:

I. Review the SMALL ENTITY status shown above.
   If the SMALL ENTITY is shown as YES, verify your current SMALL ENTITY status:

   A. If the status is changed, pay twice the amount of the FEE DUE shown above and notify the Patent and Trademark Office of the change in status, or
   B. If the status is the same, pay the FEE DUE shown above.

If the SMALL ENTITY is shown as NO:

   A. Pay FEE DUE shown above, or

   B. File verified statement of Small Entity Status before, or with, payment of 1/2 the FEE DUE shown above.

II. Part B-Issue Fee Transmittal should be completed and returned to the Patent and Trademark Office (PTO) with your ISSUE FEE.  Even if the ISSUE FEE has already been paid by charge to deposit account, Part B Issue Fee Transmittal should be completed and returned.  If you are charging the ISSUE FEE to your deposit account, section "4b" of Part B-Issue Fee Transmittal should be completed and an extra copy of the form should be submitted.

III. All communications regarding this application must give application number and batch number.
   Please direct all communications prior to issuance to Box ISSUE FEE unless advised to the contrary.

**_IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance fees.  It is patentee's responsibility to ensure timely payment of maintenance fees when due._**

PATENT AND TRADEMARK OFFICE COPY

PTOL-85 (REV. 10-96) Approved for use through 06/30/99. (0651-0033)

*U.S. GPO 1998-437-439/80023

Complete and mail this form, together with app    le fees, to:    **Box ISSUE FEE**
Assistant Commissioner for Paten...
Washington, D.C. 20231

6/10/99

| MAILING INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE. Blocks 1 through 3 should be completed where appropriate. All further correspondence including the Issue Fee Receipt, the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications. | Note: The certificate of mailing below can only be used for domestic mailings of the Issue Fee Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing. |
|---|---|
| CURRENT CORRESPONDENCE ADDRESS (Note Legibly mark-up with any corrections or use Block 1) | **Certificate of Mailing** |

I hereby certify that this Issue Fee Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Box Issue Fee address above on the date indicated below.

Jason Paul DeMont _____ (Depositor's name)

_____ (Signature)

June 18, 1999 _____ (Date)

| APPLICATION NO. | FILING DATE | TOTAL CLAIMS | EXAMINER AND GROUP ART UNIT | DATE MAILED |
|---|---|---|---|---|
|  |  |  |  |  |

First Named Applicant

TITLE OF INVENTION

| ATTY'S DOCKET NO. | CLASS-SUBCLASS | BATCH NO. | APPLN. TYPE | SMALL ENTITY | FEE DUE | DATE DUE |
|---|---|---|---|---|---|---|
|  |  |  |  | YES | $605.00 |  |

**1.** Change of correspondence address or indication of "Fee Address" (37 CFR 1.363). Use of PTO form(s) and Customer Number are recommended, but not required.

☐ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

☐ "Fee Address" indication (or "Fee Address" indication form PTO/SB/47) attached.

**2.** For printing on the patent front page, list (1) the names of up to 3 registered patent attorneys or agents OR, alternatively, (2) the name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1  DeMont & Breyer, L.L.C.

2  Wayne S. Breyer

3  Jason Paul DeMont

**3.** ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT (print or type)
PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. Inclusion of assignee data is only appropriate when an assignment has been previously submitted to the PTO or is being submitted under separate cover. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE

(B) RESIDENCE: (CITY & STATE OR COUNTRY)

Please check the appropriate assignee category indicated below (will not be printed on the patent):
☐ individual    ☐ corporation or other private group entity    ☐ government

**4a.** The following fees are enclosed (make check payable to Commissioner of Patents and Trademarks):

☒ Issue Fee    605.00 - SMALL ENTITY

☐ Advance Order # of Copies

**4b.** The following fees or deficiency in these fees should be charged to:

DEPOSIT ACCOUNT NUMBER _____
(ENCLOSE AN EXTRA COPY OF THIS FORM)

☐ Advance Order # of Copies

The COMMISSIONER OF PATENTS AND TRADEMARKS is requested to apply the Issue Fee to the application identified above.

(Authorized Signature) _____   (Date)

Jason Paul DeMont  Reg. No. 35,793    6/18/99

NOTE: The Issue Fee will not be accepted from anyone other than the applicant; a registered attorney or agent; or the assignee or other party in interest as shown by the records of the Patent and Trademark Office.

Burden Hour Statement: This form is estimated to take 0.2 hours to complete. Time will vary depending on the needs of the individual case. Any comments on the amount of time required to complete this form should be sent to the Chief Information Officer, Patent and Trademark Office, Washington, D.C. 20231. DO NOT SEND FEES OR COMPLETED FORMS TO THIS ADDRESS. SEND FEES AND THIS FORM TO: Box Issue Fee, Assistant Commissioner for Patents, Washington D.C. 20231

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

06/22/1999 KTSEDAY1 00000119 08729188
01 FC:142                    605.00 OP

**RECEIVED**

JUN 22 1999

Publishing Division
07

TRANSMIT THIS FORM WITH FEE

PTOL-85B (REV.10-96) Approved for use through 06/30/99. OMB 0651-0033    Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Serial No. 08/729,188

D.D. Wexler 1

# IN THE UNITED STATES
## PATENT AND TRADEMARK OFFICE

**Patent Application**

| | |
|---|---|
| **Inventor:** | Daniel D. Wexler |
| **Case:** | 1 |
| **Serial No.:** | 08/729,188 |
| **Filing Date:** | Oct. 11, 1996 |
| **Group Art Unit:** | 2764 |
| **Examiner:** | E.W. Stamber |
| **Title:** | Third Party On-Line Accounting System and Method Therefor |

> **Certificate of Mailing**
>
> I hereby certify that this correspondence is being deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to: Assistant Commissioner for Patents Washington, D.C. 20231 on June 8, 1999.
>
> Name of person signing this certificate: Jason Paul DeMont
>
> Signature

ASSISTANT COMMISSIONER FOR PATENTS
WASHINGTON, D.C. 20231

    Attn: Drawing Review Branch

SIR:

**RECEIVED**

TRANSMITTAL OF FORMAL DRAWINGS    JUN 1 6 1999

Publishing Division

    Please find attached the revised formal drawings for this case.

Respectfully,

By

Jason Paul DeMont
Attorney for Applicant
Reg. No. 35,793
908-903-1255

Date: 6/8/99
DeMont & Breyer, L.L.C.
224 English Place
Basking Ridge, NJ 07920

- 1 of 1-

D. D. WEXLER 1
5960409
1/2

## FIG. 1
PRIOR ART



## FIG. 2



D. D. WEXLER 1

2/2

*FIG. 3*



WTS000078

Serial No. 08/729,188                                                            D.D. Wexler 1

# IN THE UNITED STATES
## PATENT AND TRADEMARK OFFICE

**Patent Application**

| | |
|---|---|
| **Inventor:** | Daniel D. Wexler |
| **Case:** | 1 |
| **Serial No.:** | 08/729,188 |
| **Filing Date:** | Oct. 11, 1996 |
| **Group Art Unit:** | 2764 |
| **Examiner:** | E.W. Stamber |
| **Title:** | Third Party On-Line Accounting System and Method Therefor |

---

**Certificate of Mailing**

I hereby certify that this correspondence is being deposited with the United States Postal Service with sufficient postage as first class mail in an envelope addressed to. Box Issue Fee, Assistant Commissioner for Patents, Washington, D.C. 20231 on June 18, 1999.

Name of person signing this certificate: Jason Paul DeMont

Signature _____

---

ASSISTANT COMMISSIONER FOR PATENTS
WASHINGTON, D.C. 20231

SIR:

Enclosed are the following papers relating to the above-named application for patent:

1. Transmittal Letter (3x)
2. PTOL-85B Issue Fee Transmittal (2x)
3. Check for $605.00 - SMALL ENTITY STATUS

The applicant is a small entity, and therefore, the issue fee of $605.00 is enclosed.  In the event of improper payment of a required fee, the Commissioner is authorized to charge or to credit **Deposit Account No. 50-0776** as required to correct the error.

Please address all correspondence to **Jason Paul DeMont, DeMont & Breyer, LLC, 244 English Place, Basking Ridge, New Jersey  07920.**  Telephone calls should be made to me at Area Code (908) 903-1255.

Respectfully,

Jason Paul DeMont
Reg. No. 35,793
Attorney for Applicant

Date: 6/18/99

DeMont & Breyer, L.L.C.
244 English Place
Basking Ridge, NJ 07920

- 1 of 1 -

PTO/SB/66 (09-04)
Approved for use through 05/31/2006 OMB 0651-0016
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

| PETITION TO ACCEPT UNINTENTIONALLY DELAYED PAYMENT OF MAINTENANCE FEE IN AN EXPIRED PATENT (37 CFR 1.378(c)) | Docket Number (Optional) 210-001us |
| --- | --- |

Mail to: Mail Stop Petition
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450
Fax: (703) 872-9306

**RECEIVED**
MAY 2 3 2005  #11
OFFICE OF PETITIONS

NOTE: If information or assistance is needed in completing this form, please contact Petitions Information
at (703) 305-9282.

Patent No. 5,960,409 _____   Application Number 08/729,188 _____

Issue Date 09/28/1999 _____   Filing Date 10/11/1996 _____

CAUTION: Maintenance fee (and surcharge, if any) payment must correctly identify: (1) the patent
number (or reissue patent number, if a reissue) and (2) the application number of the
actual U.S. application (or reissue application) leading to issuance of that patent to
ensure the fee(s) is/are associated with the correct patent. 37 CFR 1.366(c) and (d).

**Also complete the following information, if applicable**

The above - identified patent:

☐ is a reissue of original Patent No. _____, original issue date _____
original application number _____
original filing date _____.

☐ resulted from the entry into the U.S. under 35 U.S.C. 371 of international
application _____ filed on _____.

---

CERTIFICATE OF MAILING (37 CFR 1.8(a))

I hereby certify that this paper (along with any paper referred to as being attached or enclosed) is being deposited with
the United States Postal Service on the date shown below with sufficient postage as first class mail in an envelope
addressed to Mail Stop Petition, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

5/17/05
_____
Date

_Lillian Hayes_
_____
Signature

Lillian Hayes
_____
Typed or printed name of person signing Certificate

05/20/2005 SUBHG1  00000008 5960409
01 FC:2591        2090.00 OP

[Page 1 of 3]

This collection of information is required by 37 CFR 1.378(c). The information is required to obtain or retain a benefit by the public which is to file (and by the
USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 1 hour to complete,
including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on
the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and
Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA  22313-1450. DO NOT SEND FEES OR COMPLETED FORMS TO THIS
ADDRESS. SEND TO: Mail Stop Petition, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.

_If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2._

PTO/SB/66 (09-04)
Approved for use through 05/31/2006. OMB 0651-0016
U.S. Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

1.   SMALL ENTITY

☑  Patentee claims, or has previously claimed, small entity status. See 37 CFR 1.27.

2.   LOSS OF ENTITLEMENT TO SMALL ENTITY STATUS

☐  Patentee is no longer entitled to small entity status. See 37 CFR 1.27(g).

3.   MAINTENANCE FEE  (37 CFR 1.20(e)-(g))

The appropriate maintenance fee must be submitted with this petition, unless it was paid earlier.

| NOT Small Entity | | | Small Entity | | |
|---|---|---|---|---|---|
| Amount | Fee | (Code) | Amount | Fee | (Code) |
| ☐ $ _____ | 3 1/2 yr fee | (1551) | ☑ $ 450.00 | 3 1/2 yr fee | (2551) |
| ☐ $ _____ | 7 1/2 yr fee | (1552) | ☐ $ _____ | 7 1/2 yr fee | (2552) |
| ☐ $ _____ | 11 1/2 yr fee | (1553) | ☐ $ _____ | 11 1/2 yr fee | (2553) |

MAINTENANCE FEE BEING SUBMITTED $ 450.00 _____

4.   SURCHARGE

The surcharge required by 37 CFR 1.20(l)(2) of $ 1640.00 _____ (Fee Code 1558) must be paid as a condition of accepting unintentionally delayed payment of the maintenance fee.

SURCHARGE BEING SUBMITTED $ 1640.00 _____

5.   MANNER OF PAYMENT

☐  Enclosed is a check for the sum of $ _____

☐  Please charge Deposit Account No. _____ the sum of $ _____. A duplicate copy of this authorization is attached.

☑  Payment by credit card. Form PTO-2038 is attached.

6.   AUTHORIZATION TO CHARGE ANY FEE DEFICIENCY

☐  The Director is hereby authorized to charge any maintenance fee, surcharge or petition deficiency to Deposit Account No. _____. A duplicate copy of this authorization is attached.

[Page 2 of 3]

PTO/SB/66 (09-04)
Approved for use through 05/31/2006. OMB 0651-0016
U.S Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number

7 OVERPAYMENT

As to any overpayment made please

☐ Credit to Deposit Account No. _____

OR

☑ Send refund check.

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

8. STATEMENT

The delay in payment of the maintenance fee to this patent was unintentional.

9. PETITIONER(S) REQUEST THAT THE DELAYED PAYMENT OF THE MAINTENANCE FEE BE ACCEPTED AND THE PATENT REINSTATED.

| | |
|---|---|
| Signature(s) of Petitioner(s) | 4/7/2005 <br> Date |
| Jason Paul DeMont <br> Typed or printed name(s) | Reg. No. 35,793 <br> Registration Number, if applicable |
| 732-578-0103 x11 <br> Telephone Number | |
| DeMont & Breyer, LLC <br> Address | |
| Suite 250, 100 Commons Way, Holmdel, NJ 07733 <br> Address | |

37 CFR 1.378(d) states: "Any petition under this section must be signed by an attorney or agent registered to practice before the Patent and Trademark Office, or by the patentee, the assignee, or other party in interest "

ENCLOSURES:

☑ Maintenance Fee payment

☑ Surcharge under 37 CFR 1.20(i)(2) (fee for filing the maintenance fee petition)

☐ _____

[Page 3 of 3]

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

Paper No. 12

Jason Paul DeMont
DeMont & Breyer, LLC
100 Commons Way, Ste. 250
Holmdel, NJ  07733

**COPY MAILED**

JUN 0 7 2005

**OFFICE OF PETITIONS**

In re Patent No. 5,960,409            :
Issue Date: September 28, 1999        :        ON PETITION
Application No. 08/729,188            :
Filed: October 11, 1996              :
Patentee(s) Daniel D. Wexler         :

This is a decision on the petition under 37 CFR 1.378(c), filed May 19, 2005, to accept the delayed payment of a maintenance fee for the above-identified patent.

The petition is **GRANTED**.

The maintenance fee is hereby accepted and the above-identified patent is reinstated as of the mail date of this decision.

The patent file is being forwarded to Files Repository.

Telephone inquiries concerning this decision should be directed to the undersigned at (571) 272-3226.

Andrea Smith
Petitions Examiner
Office of Petitions
Office of the Deputy Commissioner
  for Patent Examination Policy

1/2

00/729188



PRIOR ART

FIG 1



FIG 2

WTS000084

2/2                    08/729188



FIG. 3

File 636:IAC Newslette_ DB(TM)  1987-1997/Jan 16
        (c) 1997 Information Access Co.

     Set  Items  Description
     ---  -----  -----------
't 02856403/7

 02856403/7
DIALOG(R)File 636:IAC Newsletter DB(TM)
(c) 1997 Information Access Co. All rts. reserv.

 02856403
 RESEARCH FIRMS STRIVE FOR WEB TRACKING THAT COUNTS New Tracking Systems
     Promise Individual Consumer Portraits

Online audience measurement has long posed major challenges both for
marketers and research providers. Monitoring traffic through commercial
online services such as America Online and Prodigy will be tricky enough,
even if the only real hazards in that closed-network market are the pricing
and disclosure of proprietary usage data (IM News, June 9, 1995). The data
itself (and the means to collect it) already exist.

The Internet-particularly the World Wide Web-is another story altogether.

Web technology is so new that marketers just don't have the tracking
abilities they need to evaluate site performance and shop intelligently for
ad space. A couple of new usage tracking systems hope to address the
significant demand built up among marketers for reliable, third-party Web
measurement.

Unlike commercial online services, the Web has no central turnstile that
marketers can use to tally attendance. Web surfers log on anonymously and
amorphously, and a single serious cybernaut is often indistinguishable from
ten casual users. Web site owners have no way of telling individuals apart
unless they can persuade them to register and identify themselves with a
password every time they want access.

This is a problem, and many Web marketers are apprehensive about forced
registration becase it may alienate some users or at least deter them from
taking a peek at new areas. (And some folks have trouble recalling their
gym locker combinations, not to mention dozens of Web passwords they don't
even use that often.)

That's where San Francisco-based Internet Profiles Corp. (I/Pro) comes in.
By tracing Web users back to their Internet access points, I/Pro's tracking
system could help marketers count cyber-customers one by one without
disturbing (or delaying) their cruise through cyberspace.

If you can do that, "the Web is the most measurable of all media," says
I/Pro president Ariel Poler.

Measures Time Spent in Site

Once they're able to individuate users, Web site owners can easily monitor
now much time visitors spend on a particular page and what trajectory they
take through the site as a whole, Poler explains. This is crucial
intelligence for strong content evolution, according to Barrie Moore,
creative services manager at I/Pro client Poppe Tyson Advertising (Mountain
View, Calif...

"We want to know where people are going within the site," Moore says.
Combined with user feedback forms, Poppe Tyson will use I/Pro's traffic
reports to "expand content based on what people want to see," she tells IM
News.

Released last month, I/Pro's system-called I/Count starts at $200/mo. plus
installation -reportedly can achieve this without forcing registration

WTS000086

(although that's still an option for gathering more qualitative demographic info). Currently signed are such major marketers and content providers as Playboy, Xerox, Sun Microsystems, Time Warner's Pathfinder, and Chrysler Corp.'s much-publicized new Web site, developed in part by Poppe Tyson.

Visits vs. "Hits"

Counting actual visitors rather than "hits" is a far more adequate approach to Web measurement than most content providers have used until recently. The reason: hit counts inflate true usage levels by treating multiple visits from one user (even during a single session) as separate events. Besides distorting usage on a single Web site, hit counts also make it impossible for new media planners to compare among Web sites, which can register hits quite differently depending on how they're laid out.

Another tracking firm, WebTrack (New York), also eschews hit counts for distinct visit tallies. Its auditing service-dubbed WebStat (starts at $100/mo.)-is currently in beta testing, with commercial release slated for August. WebTrack is primarily targeting Web publishers selling ad space who need to substantiate traffic for prospective advertisers, says marketing director Carisa Wangsness.

Some beta-testers, however, are using the tracking service but refusing open auditing under non-disclosure agreements. This could change after WebStat rolls out commercially, but it also suggests that Web site owner are no more open to third-party auditing than commercial online services are.

Marketers should work to change this mindset. In the interest of creating an open and competitive ad market in cyberspace, "advertisers can help by demanding to see audited traffic info," Wangsness advises.
Qualitative Data

Besides raw traffic data, both I/Pro and WebTrack also offer marketers qualitative information about their audience. This is becoming a mounting concern as the online population grows large enough and diverse enough to be segmented. Until recently, cybermarketers have been largely unable to target their ad buys or develop proprietary site content with anything other than sheer intuition.

In addition to user individuation, both research firms' systems can trace Web site visitors back to their point of origin on the Net. In many cases, this lets marketers transparently identify a user's company, government organization, or university, and pinpoint their geographic region. If users log on via commercial access providers, however, such tracking won't reveal much about them. That's where user surveys and registration can come in handy.

Exposure Analysis

Working with I/Pro technology to offer qualitative services is The Delanaye Group (Portsmouth, N.H.), which last month rolled out a new Web analysis service called NetBench. Marrying traffic numbers with demographic survey info will help marketers get a better feel for their exposure quality, says Delahaye CEO Katharine Paine.

"Established patterns don't exist," Paine cautions. "Nobody's been doing this long enough to know if the numbers they're getting are any good. The best that you can hope for right now is that your numbers go in the right direction."

Beyond just measuring traffic growth, Delanaye noted client adopt its service to profile audiences, target messages and incorporate user feedback into their Web site designs. I/Pro, 415/975-9370; Delanaye, 603/431-0111; Poppe, 415/949-6890; WebTrack, 212/725-5302.

WHY WEB VISITS ARE BETTER CRITERIA THAN "HITS:"

* Hit counts distort Web usage; Web visit tallies clarify it;

* Hit counts inflate usage levels by treating multiple same- party visits as separate events;

* A hit to a file doesn't actually mean it was seen by user;
* Hit counts cloud comparisons among different Web sites;

* A visit is a visit, but hit counts can and do vary widely according to layout/composition of the Web site;

* Web visitors can often be traced back to their point of Internet access -which might ofer a trove of marketing/ demographic info.

Copyright 1995 Phillips Business Information,


Interactive Marketing News     June 23, 1995  V. 2   NO. 13    ISSN: 1078-6821
?

**PATENT APPLICATION FEE DETERMINATION RECORD**
Effective October 1, 1996

Application or Docket Number: 729188

### CLAIMS AS FILED - PART I

| FOR | NUMBER FILED (Column 1) | NUMBER EXTRA (Column 2) | SMALL ENTITY RATE | FEE | OR | OTHER THAN SMALL ENTITY RATE | FEE |
|---|---|---|---|---|---|---|---|
| BASIC FEE | | | | 385.00 | OR | | 770.00 |
| TOTAL CLAIMS | 9 minus 20 = | * 0 | x$11= | | OR | x$22= | |
| INDEPENDENT CLAIMS | 3 minus 3 = | * 0 | x40= | | OR | x80= | |
| MULTIPLE DEPENDENT CLAIM PRESENT | | | +130= | | OR | +260= | |
| | | | TOTAL | 385 | OR | TOTAL | |

\* If the difference in column 1 is less than zero, enter "0" in column 2

### CLAIMS AS AMENDED - PART II

**AMENDMENT A**

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE | ADDITIONAL FEE | OR | OTHER THAN SMALL ENTITY RATE | ADDITIONAL FEE |
|---|---|---|---|---|---|---|---|---|
| Total | * | Minus ** | = | x$11= | | OR | x$22= | |
| Independent | * | Minus *** | = | x40= | | OR | x80= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | +130= | | OR | +260= | |
| | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

**AMENDMENT B**

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE | ADDITIONAL FEE | OR | OTHER THAN SMALL ENTITY RATE | ADDITIONAL FEE |
|---|---|---|---|---|---|---|---|---|
| Total | * | Minus ** | = | x$11= | | OR | x$22= | |
| Independent | * | Minus *** | = | x40= | | OR | x80= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | +130= | | OR | +260= | |
| | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

**AMENDMENT C**

| | CLAIMS REMAINING AFTER AMENDMENT (Column 1) | HIGHEST NUMBER PREVIOUSLY PAID FOR (Column 2) | PRESENT EXTRA (Column 3) | SMALL ENTITY RATE | ADDITIONAL FEE | OR | OTHER THAN SMALL ENTITY RATE | ADDITIONAL FEE |
|---|---|---|---|---|---|---|---|---|
| Total | * | Minus ** | = | x$11= | | OR | x$22= | |
| Independent | * | Minus *** | = | x40= | | OR | x80= | |
| FIRST PRESENTATION OF MULTIPLE DEPENDENT CLAIM | | | | +130= | | OR | +260= | |
| | | | | TOTAL ADDIT. FEE | | OR | TOTAL ADDIT. FEE | |

\* If the entry in column 1 is less than the entry in column 2, write "0" in column 3.
\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 20, enter "20."
\*\*\* If the "Highest Number Previously Paid For" IN THIS SPACE is less than 3, enter "3."
The "Highest Number Previously Paid For" (Total or Independent) is the highest number found in the appropriate box in column 1.

FORM PTO-875
(Rev. 10/96)                    *U.S. Government Printing Office: 1996 - 413-268/49191              Patent and Trademark Office, U.S. DEPARTMENT OF COMMERCE

WTS000089

Form PTO 1130
(REV 2/94)

# PACE DATA ENTRY CODING SHEET

U.S. DEPARTMENT OF COMMERCE
Patent and Trademark Office

| 1ST EXAMINER | 2ND EXAMINER | DATE |
|---|---|---|

**APPLICATION NUMBER:** 08/729188

**TYPE APPL:** 7

**SMALL ENTITY?:** 7

**FILING DATE** — MONTH: 10, DAY: 11, YEAR: 96

**FILING FEE:** 505

**FOREIGN LICENSE:** 7

**SPECIAL HANDLING**

**GROUP ART UNIT:** 3607

**ATTORNEY DOCKET NUMBER:** 343

**CLASS:** 345

**SHEETS OF DRAWING:** 2

**TOTAL CLAIMS:** 6

**INDEPENDENT CLAIMS:** 3

**CONT STATUS CODE**

**PARENT APPLICATION SERIAL NUMBER**

**FOREIGN PRIORITY CLAIMED**

**COUNTRY CODE**

## CONTINUITY DATA

**PCT APPLICATION SERIAL NUMBER**

P C T /
P C T /
P C T /
P C T /
P C T /
P C T /

**PARENT PATENT NUMBER**

**PARENT FILING DATE** — MONTH, DAY, YEAR

## PCT/FOREIGN APPLICATION DATA

**PCT/FOREIGN APPLICATION SERIAL NUMBER**

**FOREIGN FILING DATE** — MONTH, DAY, YEAR

☆ U.S. GPO: 1994-401

# MPI Family Report (Family Bibliographic and Legal Status)

In the MPI Family report, all publication stages are collapsed into a single record, based on identical application data. The bibliographic information displayed in the collapsed record is taken from the latest publication.

**Report Created Date:**   2007-12-03⊔

**Name of Report:**

**Number of Families:**  1

**Comments:**

## Table of Contents

1.   **US5960409A**   19990928   NotAvailable
     Third-party on-line accounting system and method therefor ............................................................................   1



**Family1**

**1 records in the family.**

**US5960409A   19990928**

**(ENG) Third-party on-line accounting system and method therefor**

Inventor(s):  WEXLER DANIEL D     US

Application No:  US  72918896  A

Filing Date:  19961011

Issue/Publication Date:  19990928



Abstract:  (ENG) A system and method for providing on-line third party accounting and statistical information is disclosed. A third party accounting service receives a download request signal ultimately intended for an advertiser Web site. The download request signal is generated when a user clicks on a banner displayed on a Web page of a frequently-visited Web site. The banner is published by the frequently-visited Web site for the benefit of the advertiser. The third party receives the download request since, rather than pointing to the advertiser Web site, the banner is configured to point to the third party Web site. The third party Web site maintains a count of all received download request signals generated by clicking on the banner. Since an advertiser banner may be displayed at more than one frequently-visited Web site, the third party Web site further maintains a log containing the address of the frequently-visited Web site that displayed the banner that generated the click, as well as other information provided by tile user Web browser. The third party sends a redirect signal to the user Web browser causing it to send a download request to the advertiser Web site. The advertiser Web site then downloads the information originally sought by the user to his Web browser. The third party accumulates and tabulates statistical information including the number of clicks on the advertiser banner, and data indicative of the effectiveness of the banner-publisher frequently-visited Web site as an advertising medium. Such information is provided to the advertiser and/or the banner publisher.

Priority Data:  US 72918896 19961011 A Y;

IPC (International Class):   H04L01214; H04L02908; G07F01716; H04L02906

ECLA (European Class):   G07F01716; H04L01214; H04L02906; H04L02908N19; H04L02908N21

US Class:  705014; 709218; 709224; 709245; 7155011; 715738

Agent(s):   DeMont & Breyer, LC.; Breyer  Wayne S.; DeMont  Jason Paul

Examiner Primary:  Stamber, Eric W.

US Post Issuance:
--US Expiration Date: 20030928  20031125  DUE TO FAILURE TO PAY MAINTENANCE FEES
--US Delayed Payment of Maintenance Fees: 20050607  20050705  due to acceptance of delayed payment of maintenance fee

Legal Status:

| Date | +/- | Code | Description |
|------|-----|------|-------------|
| 20031125 | (-) | FP | EXPIRED DUE TO FAILURE TO PAY MAINTENANCE FEE Effective date: 20030928; |
| 20050606 | (+) | PRDP | PATENT REINSTATED DUE TO THE ACCEPTANCE OF A LATE MAINTENANCE FEE Effective date: 20050607; |



USPTO Maintenance Report

Patent Bibliographic Data                                          12/03/2007 06:20 PM

| Patent Number: | 5960409 | Application Number: | 08729188 |
|---|---|---|---|

| Issue Date: | 09/28/1999 | Filing Date: | 10/11/1996 |
|---|---|---|---|

Title:       THIRD-PARTY ON-LINE ACCOUNTING SYSTEM AND METHOD
              THEREFOR

| Status: | 12th year fee window opens: 09/28/2010 | Entity: | Small |
|---|---|---|---|

| Window Opens: | 09/28/2010 | Surcharge Date: | 03/29/2011 | Expiration: | N/A |
|---|---|---|---|---|---|

| Fee Amt Due: | Window not open | Surchg Amt Due: | Window not open | Total Amt Due: | Window not open |
|---|---|---|---|---|---|

Fee Code:     2553          MAINTENANCE FEE DUE AT 11.5 YEARS

Surcharge
Fee Code:

| Most recent events (up to 7): | 12/07/2006 | Payment of Maintenance Fee, 8th Yr, Small Entity. |
|---|---|---|
| | 07/20/2005 | Payor Number Assigned. |
| | 07/20/2005 | Payer Number De-assigned. |
| | 06/07/2005 | Petition Related to Maintenance Fees Granted. |
| | 05/19/2005 | Surcharge, Petition to Accept Pymt After Exp, Unintentional. |
| | 05/19/2005 | Payment of Maintenance Fee, 4th Yr, Small Entity. |
| | 05/19/2005 | Petition Related to Maintenance Fees Filed. |
| | | --- End of Maintenance History --- |

Address for
fee purposes:

DANIEL WEXLER
P.O. BOX 300524
BROOKLYN, NY
11230