```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
WEB TRACKING SOLUTIONS, LLC,
and DANIEL WEXLER,

                    Plaintiffs/
                    Counterclaim Defendants,

       - against -                              MEMORANDUM & ORDER
                                                08-CV-3139 (RRM) (RER)
GOOGLE, INC.,

                    Defendant/
                    Counterclaim Plaintiff.
-----------------------------------------------------------X
```
**MAUSKOPF, United States District Judge.**

Plaintiffs Web Tracking Solutions, LCC and Daniel Wexler (together, "Plaintiffs") object to Magistrate Judge Ramon E. Reyes Jr.'s Report and Recommendation (Doc. No. 69) ("R&R"), which recommends that this Court adopt certain proposed constructions of disputed claim terms. Having reviewed the R&R and Plaintiffs' objections (Doc. No. 71), the Court overrules those objections, and adopts the R&R to the extent it is consistent with this opinion.

## BACKGROUND

The Court assumes the parties' familiarity with the case and with the R&R. The facts and procedural history set forth in the R&R are incorporated herein unless otherwise noted. On July 28, 2009, the parties jointly submitted a request for the construction of patent terms at issue in this case. (Doc. No. 38.) By Order entered August 7, 2009, this Court referred the matter to Judge Reyes for a report and recommendation. On March 17, 2010, Plaintiffs and Defendant filed their claim construction briefs. (Doc. Nos. 49–52.) On April 19, 2010, the parties submitted responses to those briefs. (Doc. Nos. 56–57.) The parties submitted technology tutorials on April 26, 2010. (Doc. Nos. 59–60.) On April 29, 2010, Judge Reyes held a day-long

*Markman* hearing. (Transcript of Proceedings ("Tr.") (Doc. No. 63).) On July 27, 2010, Judge Reyes issued the R&R. (Doc. No. 69.) Plaintiffs submitted objections to the R&R on August 31, 2010. (Doc. No. 71.) On September 30, 2010, Defendant submitted its opposition to Plaintiffs' objections to the R&R. (Doc. No. 72.)

## **STANDARD OF REVIEW**

A district court may refer certain matters to a magistrate judge for a report and recommendation. *See* 28 U.S.C. § 636(b)(1). The district court may then adopt those portions of a magistrate judge's report and recommendation to which no objections have been made, provided the recommendations are not clearly erroneous. *See* Fed. R. Civ. P. 72(b); *Deleon v. Strack*, 234 F.3d 84, 86–87 (2d Cir. 2000). The district court is not required to review factual findings or legal conclusions to which no party interposes an objection. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). The district court, however, must consider *de novo* any portion of a report and recommendation to which a timely objection has been made. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *see also United States v. Raddatz*, 447 U.S. 667, 674–75 (1980).

"Normally, the judge, on application, will consider the record which has been developed before the magistrate and make his own determination on the basis of that record, without being bound to adopt the findings and conclusions of the magistrate." *Raddatz*, 447 U.S. at 674–75. Regardless of whether proper objections have been filed, the district court may, after review, "accept, reject, or modify, in whole or in part, the findings and recommendations of the magistrate judge." 28 U.S.C. § 646(b)(1); *see also* Fed. R. Civ. P. 72(b).

## **DISCUSSION**

This Court has thoroughly considered the parties' submissions regarding Plaintiffs' objections, as well as papers filed in connection with the *Markman* hearing, reviewing *de novo*

2

those aspects of the R&R to which Plaintiffs have specifically objected. As to all portions of the R&R to which no objections have been made, the Court concludes that the R&R is not clearly erroneous. *See Pizarro v. Barlett*, 776 F. Supp. 815, 817 (S.D.N.Y. 1991). For the following reasons, Plaintiffs' objections are overruled, and the R&R is adopted to the extent it is consistent with this opinion.

I. Plaintiffs' Objections

Plaintiffs' objections are limited to the portion of the R&R pertaining to the claim term "fourth Web site" included in Independent Claim 1. (Pls.' Obj. at 1.)[1] The R&R recommends that this Court adopt Defendant's proposed construction for "fourth Web site": "a Web site owned and operated independently from the first, second, and third Web sites, and that performs the function of an unbiased third-party accounting and statistical service." (R&R at 2, 10.) Plaintiffs do not object to the recommendation that this Court adopt Defendant's proposed construction. Instead, Plaintiffs contend that Judge Reyes erred by finding that any third-party accounting and statistical services that receive compensation from publishers or advertisers on the basis of the number of "clicks" counted and reported are outside the scope of the claims. (Pls.' Obj. at 2.) Plaintiffs put forth several arguments in support of their objections, each of which is considered below.

a. Dispute Over Claim Scope

Plaintiffs contend that Judge Reyes made "an impermissible factual determination that is properly reserved for the jury" by "determin[ing], as a factual matter, that any third-party accounting service that is paid based on the number of clicks that it reports is necessarily biased and outside the scope of the patent." (Pls.' Obj. at 9–10.) This argument reflects a

---

[1] The Court's construction of "fourth Web site" in Claim 1 also applies to "fourth node" in Claim 7 and "first Web site, second Web site, and third Web site" in Claims 1 and 9. (R&R at 9 n.8.)

3

misunderstanding of the claim construction process. "When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it," *02 Micro Int'l Ltd. v. Beyond Innovation Tech., Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008), "ensur[ing] that questions of the scope of the patent claims are not left to the jury." *Every Penny Counts, Inc. v. Am. Express Co.*, 563 F.3d 1378, 1383 (Fed. Cir. 2009) (citation omitted). In other words, questions regarding the scope of patent claims are decided "as a matter of law," not fact. *Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 988 (Fed. Cir. 1999).

In asking the Court to adopt its proposed construction for "fourth Web site," Defendant argued that the prosecution history made clear that the inventor limited the scope of the claims to exclude accounting services whose revenues increase each time they record and report a "click" on an ad from the publisher's website. (*See, e.g.*, Def.'s Resp. Br. on Claim Construction (Doc. No. 57) at 7.) Plaintiffs took the opposite position, urging the court not to adopt a construction "that would preclude the third party entity from having any financial incentive related to its performance of the accounting function." (Pls.' Resp. Br. on Claim Construction (Doc. No. 56) at 3.) This is a clear dispute regarding claim scope, which the R&R was required to, and did, resolve. *See, e.g.*, *02 Micro*, 521 F.3d at 1361–62 (vacating jury verdict of infringement where the parties disputed the scope of a claim term, but the district court failed to construe the term, improperly permitting the parties to argue its meaning and legal significance to the jury).

After considering the prosecution history, in which the inventor explained that his invention addressed the problem of a financial incentive to bias "click" statistics that was inherent in prior accounting systems, the R&R correctly determined that "an arrangement" whereby "an independently owned and operated accounting service [that] contract[ed] with a publisher to share the publisher's profits from pay-per-click advertisements, thus increasing its

4

revenues every time it counted an additional click . . .[, would] fly in the face of the purpose of" the patent. (R&R at 17.) In other words, this independently owned and operated accounting company would share with the publisher the financial incentive to bias "click" statistics against the advertiser. As the inventor clearly and unambiguously used the absence of financial bias from his invention to distinguish the patent from prior art, which the inventor claimed had the financial incentive to bias "click" statistics, Plaintiffs are now "held to what [the inventor] declare[d] during the prosecution of his patent." *Gillespie v. Dywidag Sys. Int'l, USA*, 501 F.3d 1285, 1291 (Fed. Cir. 2007); *see also* R&R at 15 (citing *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("Claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers.")). [2] Accordingly, this Court finds as a matter of law that a third-party accounting service whose compensation is "dependent on the accounting statistics collected" is outside the scope of the claims. (*See* R&R at 14 (citing Prosecution History, WTS000051)).

Plaintiffs also argue that the Court should consider dispositive the fact that the prosecution history does not explicitly specify "how the third party accounting service is to be paid." (Pls.' Obj. at 17.) This argument fails because it relies on a strained and mechanical interpretation of the prosecution history.[3] It is clear that the inventor noted that publishers and advertisers have a financial incentive to bias statistics when they are responsible for counting "clicks" in order to explain how and why his third-party accounting service would *not* have a

---

[2] Plaintiffs also argue that statements made by Judge Reyes during the *Markman* hearing indicate that he did not intend to determine as a matter of law that financially-interested, third-party accounting services are outside the scope of the claims. (*See* Pls.' Obj. at 5.) This argument is misplaced and merits only a brief response. As discussed above, the R&R correctly limited the scope of the claims, and the Court shall not speculate about why Judge Reyes engaged in a particular line of questioning at the *Markman* hearing.

[3] As the R&R correctly notes, Plaintiffs' related argument is also "strained": that "'at no time during prosecution did [the inventor] refer to the third party accounting service as unbiased' because he discussed the perception of bias only 'when referring to when it was either the publisher or the advertiser that was doing the accounting' . . . ." (R&R at 14 n.11 (citing Pls.' Resp. at 4.))

similar financial incentive to bias "click" statistics. Indeed, the inventor made clear that the patent would solve the intrinsic "trust" problem of a system in which the accountant has a financial incentive to bias statistics in favor of either the publisher or advertiser. (Prosecution History, WTS000051.) The inventor made these statements after his patent application was rejected, in order to distinguish his invention from prior art, and Plaintiffs are thus "preclude[ed] . . . from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003) (citations omitted).[4] As discussed above, the asserted claims extend only to financially-neutral accounting services, which have no financial incentive to skew the number of recorded "clicks" because they do not receive more or less compensation for their services based on the number of "clicks" reported.[5]

### b. Alleged Use of Accused Product in Claim Construction Process

Plaintiffs also argues that "the exclusion of a third party accounting service that is paid on a per-click basis is specifically tailored to make Google's product non-infringing," relying on the rule articulated in *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1330–31 (Fed. Cir. 2006). (Pls.' Obj. at 16.) This "rule posits that a court may not use the accused product or process as a form of extrinsic evidence to supply limitations for patent claim language." *Wilson Sporting Goods*, 442 F.3d at 1331. It is clear, however, that the R&R does not violate this rule. First, as discussed above, the construction for the claim limitation is based

---

[4] Plaintiffs also argue that, in resolving this dispute over claim scope, the R&R "focuses solely on one factor, method of payment, to the exclusion of all other relevant factors, in determining whether a third-party accounting system is 'unbiased.'" (Pls.' Obj. at 3.) This argument has no merit. As the R&R correctly notes, this is but one "example" of an accounting service that is not "unbiased." (R&R at 17.)

[5] The Court rejects Plaintiffs' contention that the R&R "misconstrues the intrinsic evidence" and "incorrectly conflates" various concepts. (Pls.' Obj. at 4.) Quite the contrary, as discussed above, the R&R is thorough and well-reasoned. The Court notes, however, that one statement in the R&R – that "Nielsen does not have a financial interest in the numbers it reports" – appears to be unsupported by the record. (R&R at 15.) This does not alter the Court's analysis, however, because there is sufficient evidence in the record to support the R&R's construction of "fourth Web site."

on the patent's prosecution history, in which the inventor argued to the Patent Office that, unlike prior art, his invention addressed the problem of real or perceived bias when the compensation received for accounting services is "dependent on the accounting statistics collected," thereby creating an incentive to skew "click" statistics. (R&R at 14 (quoting Prosecution History, WTS000051) (explaining that "[t]his payment aspect was critical to [the inventor's] ability to overcome the Patent Office's two rejections of his application on the grounds that his invention was 'clearly anticipated' by prior art"). There is nothing in the R&R to suggest that the claim limitation was based on Defendant's accused product. Second, although Plaintiffs complain that Defendant disclosed information about the accused product to the Court, (Pls.' Obj. at 15–16), this rule "does not forbid awareness of the accused product or process to supply the parameters and scope of the infringement analysis, including its claim construction component." *Wilson Sporting Goods*, 442 F.3d at 1331. The R&R neither discusses nor refers to the accused product, and this Court finds that it fully complies with the rule set forth in *Wilson Sporting Goods*.

**CONCLUSION**

Pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72, the Court has reviewed the parts of the R&R (Doc. No. 69) to which there has been no objection for clear error and, finding none, concurs with those parts of the R&R. *See Covey v. Simonton*, 481 F. Supp. 2d 224, 226 (E.D.N.Y. 2007). The Court has further conducted a *de novo* review of those aspects of the R&R to which objections have been interposed. Upon careful consideration, this Court overrules Plaintiffs' objections, and adopts the R&R to the extent it is consistent with this opinion.

This matter is re-committed to the assigned Magistrate Judge for further pre-trial proceedings.

SO ORDERED.

Dated: Brooklyn, New York  *Roslynn R. Mauskopf*
   August 1, 2011  _____
                     ROSLYNN R. MAUSKOPF
                     United States District Judge